NEW MEDICO ASSOCIATES, INC. and
New Medico Community Re–Entry
Services, Plaintiffs–Appellants,

v.

Gary SNADON, Defendant–Respondent.

No. 18361.

Missouri Court of Appeals,
Southern District,
Division Two.

June 17, 1993.

Douglas S. Evans, Evans & Green,
Springfield, for plaintiffs-appellants.

Gary W. Allman, Cantwell, Allman,
Smith & Trokey, Branson, for defendant-
respondent.

FLANIGAN, Judge.

Plaintiffs New Medico Associates, Inc.
and New Medico Community Re–Entry Ser-
vices of Arkansas brought this action
against defendant Gary Snadon, seeking
payment of the amount allegedly due under
a "Payment Agreement" dated June 2,
1989, and a guaranty dated May 4, 1989.
After a non-jury trial, the trial court made
findings of fact and conclusions of law and
entered judgment in favor of defendant.
Plaintiffs, who will be referred to as Medi-
co, appeal.

Medico's sole point is that the trial court
erred in finding that there was no contract
between Medico and defendant "because
the evidence showed the existence of such
a contract in that the words and actions of
the parties, if given their plain meaning,
clearly indicated a promise on the part of
defendant to pay for any of Forrest Har-
per's medical treatment which was not cov-
ered by insurance, and an acceptance and
reliance on that promise on the part of
[Medico]."

Medico is the operator of Timber Ridge
Ranch, a "head injury treatment facility"
located in Arkansas. Forrest Harper was
a patient at Timber Ridge Ranch from May
16, 1989, to December 22, 1989. Medico's

charges for treatment of Harper totaled $151,758.50. Of that amount, Harper's insurance company paid $58,381.15. Medico's original petition sought recovery from defendant of $19,513.75, together with interest at the lawful rate after December 22, 1989. On April 7, 1992, shortly prior to trial, Medico amended the body and prayer of its petition to substitute the amount of $93,377.35 for the amount of $19,513.75.

There were several attachments to the petition, including Exhibit 1 and Exhibit 2. These documents require description and discussion.

### EXHIBIT 1

This exhibit is a handwritten note dated May 4, 1989, and signed by defendant Gary W. Snadon. It reads:

"By this note I personally guarantee payment of any and all expenses for treatment at Timber Ridge for Forrest K. Harper that is denied by his insurance carrier.

Gary W. Snadon"

### EXHIBIT 2

This exhibit consists of three typewritten pages and bears the title "PAYMENT AGREEMENT." It is dated June 2, 1989. This document reads, in pertinent part:

"1. *Payment.* [Defendant Snadon] shall reimburse [Medico] a fee-for-service amount which is estimated to be approximately Three Hundred Fifty ($350) Dollars per day [for services to Harper]. Reimbursement to [Medico] must take place within ten (10) days of receipt of a statement of charges from [Medico]. Charges shall be paid thirty days in advance of service.... [Medico] reserves the right to alter the daily rate upon seven (7) days written notice to [defendant Snadon].

.    .    .    .    .

"7. *Integration.* This Agreement constitutes the entire Agreement between the parties and supersedes any prior written or oral understanding between the parties with respect to the provision of services under this Agreement."

Page 3 of this exhibit contains printed lines for signatures. Two lines are for execution by the two plaintiffs. One of those lines is executed on the part of the first plaintiff and dated June 21, 1989. The second line is executed on the part of the second plaintiff and is dated June 2, 1989. The third signature line is for execution by defendant Gary Snadon. That line is unsigned and left blank.

About an inch below the line calling for the signature of Gary Snadon, which was left blank, Snadon appended and signed the following:

"I will accept responsibility for Forrest K. Harper in the event the insurance company does not accept responsibility.

Gary Snadon"

Gary Snadon signed the foregoing on June 2, 1989. Snadon testified that when he received Exhibit 2, "it was not signed by anybody." On December 6, 1989, Medico sent a letter to Snadon which reads: "Enclosed please find, for your records, a copy of [Exhibit 2] which has been signed by all duly authorized signators...."

The only reference to Exhibit 1 and Exhibit 2 contained in the petition consists of the following:

"For value received, defendant executed and delivered to [Medico] the Payment Agreement [Exhibit 2], and Guaranty [Exhibit 1], attached to this petition; [p]rincipal of $19,513.75 (later amended to $93,377.35) and interest on that amount at the rate of 9 percent per annum from December 22, 1989, and the costs of this action are now due according to the terms of the Payment Agreement and Guaranty; plaintiff demanded payment of the balance due on the Payment Agreement and Guaranty." The petition alleged no other basis for recovery.

Medico's evidence concerning Exhibit 1 consisted of the following: Exhibit 1 is in the records of Medico. Medico's record custodian "had nothing to do with the documents, generating the documents, or discussing the documents with anyone before they were submitted to anybody."

Medico's evidence concerning Exhibit 2 consisted of the following: Medico's record

custodian testified that Exhibit 2 was sent to defendant by Medico. The custodian also testified, "I am familiar with what amount is due if the provisions of Exhibit 2 are put into effect, limiting the coverage to $350 a day, and that amount is $19,513.75."

The trial court found: The guaranty of May 4, 1989, [Exhibit 1], was an offer made by defendant; Medico made a counteroffer to defendant on June 2, 1989, [Exhibit 2], thereby rejecting defendant's offer of May 4, 1989; defendant made a counteroffer to plaintiff, "by notation on page 3 of Medico's offer, thereby rejecting the counteroffer of Medico"; Medico did not accept the counteroffer of defendant; no contract was entered into between Medico and defendant; the actions, conduct, and subsequent communications from Medico to defendant indicate that Medico understood that the agreement of the parties was as embodied by the document entitled "Payment Agreement" and dated the second day of June 1989; the actions and conduct of defendant indicate that he understood the terms of his counteroffer dated June 2, 1989, to be the agreement of the parties;[1] at no time did Medico and defendant have the same understanding, agreement, or belief of the terms and conditions of an agreement, and therefore there was no agreement entered into; defendant is not liable to Medico.

Medico's point, in this court, makes no mention of Exhibit 1 or Exhibit 2. The point mentions a "contract" but does not identify the contract.

■ Appellate review is limited to the issues presented in Medico's point. *Pruellage v. DeSeaton Corporation*, 380 S.W.2d 403, 405[3] (Mo.1964); *Don L. Tullis & Associates, Inc. v. Gover*, 577 S.W.2d 891, 893[2] (Mo.App.1979). The burden is on Medico, as appellant, to demonstrate error. *State, et al. Plaza Prop. v. Kansas City*, 687 S.W.2d 875, 876[2] (Mo. banc 1985); *Austin v. Trotters Corp.*, 815 S.W.2d 951, 957[4] (Mo.App.1991). The trial court's

judgment is presumed valid, and the burden is on appellant to show that it is incorrect. *Delaney v. Gibson*, 639 S.W.2d 601, 604[4] (Mo. banc 1982).

■ A guaranty is a species of contract. *Aalco Plumbing Sup. Co. v. John L. Henson Plumbing Co.*, 464 S.W.2d 10, 12[1] (Mo.1971); *Standard Meat Co. v. Taco Kid of Springfield, Inc.*, 554 S.W.2d 592, 595 (Mo.App.1977). It is a collateral agreement for another's undertaking and is an independent contract which imposes responsibilities different from those imposed in the agreement to which it is collateral. *Taco Kid*, at 595. It is the guaranty agreement which contains the express conditions on the guarantor's liability and which defines the obligations and rights of both the guarantor and guarantee. *Id.*

■ "[I]n order to make a contract there must be, among other things, a meeting of the minds of the contracting parties regarding the same thing, at the same time ... [s]o long as any element of the proposition is left open, the contract is not complete and, of course, not binding on anyone." *Bearup v. Equitable Life Assur. Soc. of the U.S.*, 172 S.W.2d 942, 945[2] (Mo.1943). "The parties must have a distinct intention, common to both, and without doubt or difference. Unless all the parties understand alike there can be no assent and therefore no contract. Both parties must assent to the same thing in the same sense and their minds must meet as to all the terms." *Dobbins v. City Bond & Mortgage Co.*, 124 S.W.2d 1111, 1116[8, 9] (Mo.1938). The creation of a contract requires a definite offer and an unequivocal acceptance. *Around the World Importing v. Mercantile*, 795 S.W.2d 85, 90[14] (Mo.App.1990).

In *Industrial Bank & Trust Co. v. Hesselberg*, 195 S.W.2d 470, 473–474 (Mo.1946), the court said:

---

**1.** Snadon testified: "I did not sign up above where a signature place was made available to me because I didn't think the document was needed at that point in time because our agreement was if the insurance company paid, Medico would bill the insurance company for enough money to cover his charges. I would not be responsible. That was my understanding of the negotiations." Since this court affirms the finding of the trial court that there was no contract, there is no issue of construction of a contract.

[W]here there has been but an offer or proposal to guarantee the performance of an undertaking of another, there is no contract until the offer is accepted. This is the rule as to contracts generally. And, except where the offer by its terms is acceptable, without notice, by the offeree's performance, there is no binding contract of guaranty unless it has been made known to the offerer that the offer has been accepted; otherwise the offerer would not have seen a landmark from which to measure the extent of his liability. Adhering to the rule that acceptance and notice of acceptance of a mere offer of guaranty are necessary, yet acceptance and notice thereof may be inferred if the circumstances justify the inference, or notice of acceptance may be waived if a purpose to do so appears in the terms of the offer or in the conduct of the parties. (Authorities omitted.)

■ Did Exhibit 1 ripen into a contract which bound the parties? It is clear that Exhibit 1 and Exhibit 2 cannot co-exist as binding contracts. If Exhibit 2 is valid, paragraph 7 of Exhibit 2 eliminates Exhibit 1, even if there was evidence that Exhibit 1 had previously ripened into a contract by Medico accepting it and Medico points to no such evidence. Medico's brief contains this statement: "The agreement dated June 2, 1989 [Exhibit 2] is clearly an enforceable contract for the payment of Forrest Harper's medical bills. The document also allows the court to determine the exact amount of defendant's liability."

Medico's correspondence with defendant Snadon following Harper's admission to Timber Ridge Ranch is inconsistent with Exhibit 1 and Medico's construction of it. Based on Exhibit 1, Medico calculates that it is entitled to recover $93,377.35 from defendant. At no time, prior to the amendment to the petition on April 7, 1992, did Medico claim that Snadon owed it $93,377.35. The first demand for payment which Medico sent Snadon was contained in a letter of June 17, 1991, in which Medico informed defendant that he was indebted to Medico, under Exhibit 2, in the sum of $21,271.47. On July 9, 1991, Medico sent defendant a letter correcting that figure

and stating that "the amount outstanding is now $19,513.75." Those letters demonstrate that Medico did not regard Exhibit 1 as having ripened into a binding contract because the calculations contained in those letters were based on paragraph 1 of Exhibit 2. At the trial, Medico elicited testimony from its witness Gary Graham that under Exhibit 2 the amount due from Snadon was $19,513.75. Medico is not justified in relying on Exhibit 1 as a basis for recovery.

Did Exhibit 2 ripen into a contract which bound the parties? Medico's brief describes Exhibit 2, as originally submitted to defendant Snadon, as an offer. Medico's brief says: "Defendant did not execute [Exhibit 2] but made a counteroffer to Medico on June 2, 1989." Medico says that Snadon's counteroffer consisted of the language which Snadon appended to Exhibit 2 and signed. That language reads: "I will accept responsibility for Forrest K. Harper in the event the insurance company does not accept responsibility." Medico's brief says: "The counteroffer was not accepted by [Medico]."

Paragraph 1 of Exhibit 2, dealing with payment, was not carried out by Medico. If Exhibit 2, including paragraph 1, became effective, charges were to be paid 30 days in advance of service and reimbursement to Medico would take place within 10 days of receipt of a statement of charges. The only statement sent by Medico to Snadon during the time Harper was a patient at Timber Ridge Ranch was contained in a letter dated June 5, 1989, which was sent to Snadon but was also sent to Harper's insurance company which had earlier accepted responsibility. That letter was addressed "To Whom it May Concern," and requested payment for services rendered Harper from May 16, 1989, through May 31, 1989, in the amount of $3,569.50. It made no demand on Snadon that he pay any amount. Medico's amendment of the petition to seek $93,377.35 is inconsistent with a contention that Exhibit 2 ripened into a binding contract because Medico calculates that under Exhibit 2 it is limited to a recovery of $19,513.75 from defendant.

Medico is not justified in relying on Exhibit 2, or Snadon's notation on Exhibit 2, as a basis for recovery.

The trial court found that Exhibit 1, Exhibit 2, and defendant's notation on Exhibit 2, constituted a series of offers and counteroffers, none of which was accepted. The trial court found that no contract was reached between Medico and defendant. This court agrees. In the language of *Dobbins, supra,* there was no showing that the parties assented to the same thing in the same sense and that their minds met as to all the terms. Medico has not demonstrated that the judgment is incorrect.

The judgment is affirmed.

PREWITT, J., concurs in the result.

GARRISON, J., concurs.

