**CITIBANK (SOUTH DAKOTA), N.A., Appellant,**

v.

**Jennifer S. WILSON, Respondent.**

No. WD 63861.

Missouri Court of Appeals, Western District.

April 26, 2005.

■■■■■■■■■■■■■■■■■

Edward R. Spalty, Gerald A. King, Co–Counsel, Karrie J. Clinkinbeard, Co–Counsel, Kansas City, MO, for Appellant.

Jackie D. Hendrix, St. Joseph, MO, for Respondent.

Before LOWENSTEIN, P.J., SPINDEN and SMART, JJ.

HAROLD L. LOWENSTEIN, Judge.

Citibank (South Dakota), N.A. ("Citibank") appeals from the trial court's judgment in favor of Jennifer Wilson. Citibank sued Wilson for breach of contract after Wilson failed to make payments on her Citibank credit card account. After Citibank presented its case, the trial court granted Wilson's oral motion to dismiss.

## FACTS

In December 1999, Wilson applied for a Citibank credit card and signed an acceptance certificate, agreeing to be bound by the terms and conditions of the credit card agreement.[1] Citibank subsequently issued her a credit card. Wilson began using her credit card and made monthly payments to Citibank. In July 2001, Citibank mailed Wilson her credit card statement, which informed her that it was modifying the terms of the original agreement. This revised agreement was enclosed with the credit card statement. After the July 2001 statement was mailed to her, Wilson continued using her credit card and made monthly payments on her account balance. Wilson made her last payment to Citibank in March 2002 and failed to make payments thereafter. Citibank consequently filed a "Petition On Contract" against Wilson to collect the overdue balance, $12,272.84.

At trial, Citibank attempted to enforce the revised agreement that Wilson received with her July 2001 credit card statement. In presenting its case, Citibank produced the revised agreement but did not introduce the original agreement. At the close of Citibank's evidence, Wilson orally moved to dismiss the case. The trial court sustained Wilson's motion, reasoning that Citibank had failed to prove that Wilson had accepted the revised agreement or that the revised agreement was supported by valid consideration.

## STANDARD OF REVIEW

■■■■ "A motion to dismiss at the close of a plaintiff's evidence in a court-tried case submits the issues on the merits on which plaintiffs have the burden of persuasion, requiring the trial court to determine credibility of the witnesses and to weigh the evidence, so that the appeal from the ruling on the motion is from a final determination of the issues in question." *Morris v. Brown*, 941 S.W.2d 835, 839 (Mo. App.1997). Consequently, an appellate court will affirm the judgment unless it is against the weight of the evidence, it is not supported by substantial evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## I.

Citibank's first point claims that the trial court erred by not applying South Dakota law in determining whether Wilson had accepted the revised agreement. Citibank argues that South Dakota law governs its contractual relationship with Wilson and

---

1. The acceptance certificate was signed by Jennifer Heitman, which was Wilson's name prior to October 2000. In October 2000, she changed her name to Jennifer Wilson and all credit card statements mailed after that date reflected the change.

contends that, under South Dakota law, it could unilaterally change the terms of their contract and Wilson would not have to expressly assent to the changes for there to be a valid, binding agreement.[2] Accordingly, Citibank claims that the trial court's failure to apply South Dakota law led to the erroneous judgment.

Citibank argues that South Dakota law should have been applied because: (1) federal case law requires that the laws of a credit card company's home state must be applied in a suit to enforce a credit card agreement; and (2) the credit card agreement contains a clause providing that South Dakota law governs the terms and enforcement of the agreement. Both arguments are misplaced.

Citibank argues that the United States Supreme Court has held that South Dakota law applies to contracts entered into by a credit card issuer, citing *Marquette National Bank v. First of Omaha Service Corp.*, 439 U.S. 299, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978), and *Smiley v. Citibank* (South Dakota) N.A., 517 U.S. 735, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996), in support of this proposition. However, Citibank misconstrues these two cases. First, *Marquette* dealt with whether a national bank could charge an out-of-state credit card holder an interest rate that was valid in the bank's home state when such rate was not permitted by the laws of the cardholder's state. 439 U.S. at 301, 99 S.Ct. 540. *Smiley* dealt with whether late fees were properly considered interest. 517 U.S. at 737, 116 S.Ct. 1730. Further, the National Bank Act, 12 U.S.C. § 85, which was at issue in both *Marquette* and *Smiley*, only addresses the interest rate that a bank may charge. Nowhere in the cases cited by Citibank, nor in the statute interpreted by those cases, is there any language that mentions the application of the laws of the credit card issuer's home state in relation to the enforcement of contracts, let alone mandating the application of such laws.

Citibank also argues that South Dakota law applies because the credit card agreement contained a choice of law provision. This court agrees with Citibank that a valid choice of law provision in a contract would bind the parties. However, Citibank disregards the fact that the only choice of law provision before the trial court was contained in the revised agreement, the validity of which is in question. This court would have to resort to circular logic to reach Citibank's conclusion that the agreement was valid. Here, Citibank argues that the agreement would be valid if South Dakota law applies. For South

---

2. South Dakota law provides:

Upon written notice, a credit card issuer may change the terms of any credit card agreement, if such right of amendment has been reserved, including finance charges, fees and other costs, effective as to existing balances, so long as the card holder does not, within twenty-five days of the effective date of the change, furnish written notice to the issuer that he does not agree to abide by such changes. Upon receipt of such written notice by the issuer, the card holder shall have the remainder of the time under the existing terms in which to pay all sums owed to the issuer or creditor. Use of the card after the effective date of the change of terms, including a change in interest rates, is deemed to be an acceptance of the new terms, even though the twenty-five days have not expired.

S.D. CODIFIED LAWS § 54–11–10 (Michie 2000). Further,

[t]he use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer with reference to any accepted credit card, and any charges made with the authorization of the primary card holder.

S.D. CODIFIED LAWS § 54–11–9 (Michie 2000).

Dakota law to apply, the choice of law provision in the revised agreement must be given effect. But the choice of law provision is effective only if the revised agreement is valid. In essence, Citibank is asking that this court use a term from an agreement to determine its validity.

■ Despite Citibank's misplaced arguments as to why South Dakota law applies, the issue is moot. Under Missouri contract law, there was sufficient evidence that Wilson had, in fact, accepted the revised agreement through her conduct, i.e., her continued use of the credit card after receiving the July 2001 credit card statement that included the terms of the revised agreement.

■ The basic elements of a contract are offer, acceptance of that offer, and consideration to support the contract. *Luebbert v. Simmons*, 98 S.W.3d 72, 77 (Mo.App.2003). Here, there is no question as to whether Citibank made a valid offer to Wilson concerning the revised agreement.[3] The issue is whether Wilson accepted the offer and whether there was consideration to support the contract.

■ Acceptance of an offer need not be made by spoken or written word. *Envtl. Waste Mgmt., Inc. v. Indus. Excavating & Equip., Inc.*, 981 S.W.2d 607, 612 (Mo.App. 1998). An offer may, instead, be accepted by the offeree's conduct or failure to act. *Id.* This is especially true where "services are rendered under circumstances such that the party benefited thereby knows the terms on which they are being offered. If this party receives the benefit of the services in silence, when there was a reasonable opportunity to reject them, this party is manifesting assent to the terms proposed and thus accepts the offer." 1 Jo-

SEPH M. PERILLO, CORBIN ON CONTRACTS § 3.21, p. 415 (Rev. ed.1993).

Here, Wilson accepted the revised agreement by her conduct with regard to her credit card. Citibank presented evidence that it mailed Wilson her July 2001 credit card statement, which notified her that the revised agreement was enclosed. Furthermore, Citibank communicated to Wilson that the revised agreement was binding unless she cancelled her account within thirty days and did not use her credit card. Despite the fact that Wilson could have cancelled her account, she continued to use her credit card after July 2001, thus manifesting her acceptance of the revised agreement.

■ In addition, there was also sufficient evidence of consideration to support the contract. Consideration exists where there is a detriment to the promisee or a benefit to the promisor. *McRentals, Inc. v. Barber*, 62 S.W.3d 684, 706 (Mo.App. 2001). "This consideration may consist of some right, interest, profit, or benefit accruing to one party, or some forbearance, loss, or responsibility given, suffered, or undertaken by the other party." *Carter v. St. John's Reg'l Med. Ctr.*, 88 S.W.3d 1, 10 (Mo.App.2002).

Here, both parties received a benefit and incurred a detriment by entering into the agreement. Wilson benefited by being able to purchase items on credit, while incurring a legal obligation to repay the debt with interest. Likewise, Citibank received Wilson's promise to repay with interest the credit advanced to her in exchange for the extension of credit. This is sufficient to constitute valid consideration to support the contract entered into by the parties. Because this point is dispositive,

---

**3.** When the trial court ruled on Wilson's motion at trial, it specifically noted that "there [was] proof that there was an offer."

this court need not address Citibank's final point on appeal concerning quantum meruit.

### Conclusion

Because the trial court erred in determining that there was insufficient evidence of Wilson's acceptance of the revised agreement or valid consideration to support the contract, this court reverses the judgment dismissing the case and remands to allow Wilson to present her evidence.

All concur.