Jack **WALKER, Plaintiff,**

**D.E. Rogers and Michalee Rogers, Appellants,**

v.

**Ben L. ROGERS and Albany Home Sales, Inc., Respondents.**

No. WD 64708.

Missouri Court of Appeals, Western District.

Jan. 31, 2006.

Jerold L. Drake, Grant City, MO, for appellants.

Edward M. Manring, Albany, MO, for respondents.

Before HARDWICK, P.J., BRECKENRIDGE and SPINDEN, JJ.

PATRICIA BRECKENRIDGE, Judge.

Doyle Eugene (Gene) and Michalee Rogers, husband and wife, appeal the trial court's judgment in favor of Ben Rogers and Albany Homes Sales, Inc., on their claims for an accounting of the corporate records of Albany and an injunction seeking to enjoin the sale of Albany's assets. On appeal, they assert the trial court's judgment, finding that they lacked standing to request an accounting, was not supported by substantial evidence. Specifically, they contend that Gene's expressed intention to retain an ownership interest in Albany precluded relinquishment of his shareholder rights, including the right to demand an accounting, even though he cashed a check from Ben Rogers, which contained a restrictive indorsement that the check was for full and complete purchase of Gene's interest in Albany. Because Gene accepted Ben Rogers' offer to purchase Gene's entire ownership interest in Albany when he cashed the check from Ben, intended as an offer to purchase Gene's entire ownership interest, Gene lacked standing to demand an accounting of Albany or seek an injunction of the sale of Albany's assets. Accordingly, the trial court's judgment is affirmed.

**Factual and Procedural Background**

In March 2000, Ben Rogers (Ben) solicited capital contributions to Albany Home Sales, which Ben incorporated for the purpose of selling modular homes.[1] In addition to Ben's initial investment, which consisted of a fifty-one percent ownership interest in Albany, Ben garnered five additional investors. Specifically, Gene invested $22,500 in Albany; Ron Hinkle invested $25,000; Duane Williams invested $25,000; Jack Walker invested $5000; and

---

1. Use of first names is to avoid confusion.  No disrespect toward the parties is intended.

Jean Rogers invested $25,000.[2] While Gene believed that his $22,500 investment represented a 12¼% ownership interest in Albany, Gene admitted that he was not told his ownership interest when he made his investment. Ben stated that because Gene invested less than the other investors, Gene's share was only nine percent. In addition, Albany provided Gene Schedule K-1 tax forms for the years 2000 and 2001, which indicated that Gene held a nine percent ownership interest in Albany.

In November 2001, Ben and his wife, Karen Rogers, visited Gene and Michalee in Coon Rapids, Minnesota. While Ben indicated that the trip was to view land near Gene regarding a development opportunity, Ben and Gene did discuss Albany. Ben also discussed concerns he had with Mr. Hinkle, who was both a shareholder and an employee of Albany. On November 26, 2001, after Ben and Karen left, Michalee, who was concerned about Ben's dealings with Mr. Hinkle, convinced Gene to gift one-half of his supposed 12¼% interest in Albany to her through a signed writing. Neither Gene nor Michalee informed Ben or Albany of the purported transfer of half of Gene's shares.

On April 16, 2002, Gene called Ben with concerns he had regarding a tax form he received from Albany's accountant. In particular, he told Ben that the form he received indicated that he had a 9% interest in Albany rather than a 12¼% interest. Gene also voiced his concern over Ben's treatment of Mr. Hinkle and asked Ben for a full accounting of Albany. In response, Ben told Gene that he was sending a check to Gene the next day to purchase his ownership interest. Gene told Ben that his ownership interest was not for sale. Ben

testified that by the end of the conversation, he and Gene had agreed to a $26,000 purchase price.

Gene and Ben had two additional phone conversations over the next two days regarding Albany and its financial situation. On April 18, 2002, at the end of the second conversation, Ben told Gene that he was going to send him a check for $26,000 for his shares in Albany. Thereafter, on April 22, 2002, Gene received a check written on the account of Ben and Karen Rogers, dated April 19, 2002, and signed by Karen, for $26,000. The check also contained the following restrictive indorsement: "Endoser [sic] acknowledges full and coplete [sic] purchase of all interest in Albany Home Sales Inc. of Albany, Mo. A Mo. Corporation by Ben & Karen Rogers. Endorser is seller, stock purchase." In addition, handwritten on the memo line of the check was the statement, "buyout of 9% ownership via stock purchase Albany Home Sales Inc."

On April 26, 2002, Gene signed the check above the restrictive indorsement written by Karen and Ben and deposited the check into his bank account. When signing the check, Gene placed his own restrictive indorsement on the check just below Ben's restrictive indorsement. Specifically, Gene's indorsement stated, "[r]eceived partial payment for ownership in Albany Homes Sales. D.E. Rogers." Gene did not provide notice of the additional indorsement to Ben, Karen, or anyone representing Albany.

On December 16, 2002, an attorney representing Mr. Hinkle, Mr. Walker, and Gene submitted a written demand to Albany's attorney, pursuant to section 351.215, RSMo 2000,[3] to examine the books and records of Albany's accounts. Ben re-

---

2. Ben is Gene's younger brother and Jean Rogers is Ben and Gene's sister.

3. All statutory references are to the Revised Statutes of Missouri 2000.

sponded in writing on January 4, 2003. Ben's letter stated that Mr. Hinkle and Mr. Walker could contact him at their convenience to arrange a time to review any of Albany's records. Regarding Gene's request, however, Ben stated that because Gene's shares were "bought out about mid year 2002" and, therefore, Gene was no longer a shareholder, he would not be allowed access to Albany's corporate records. Ben's response also stated that, if Gene "wishes to buy back the stock he sold," "that could be done."

On December 8, 2003, Gene, Michalee, and Mr. Walker filed a three-count petition against Albany and Ben. In the first two counts, Gene, Michalee, and Mr. Walker sought an accounting of Albany and an injunction to enjoin the sale of Albany's property and assets. The third count involved only Mr. Walker and sought damages for breach of contract for sales commissions Albany allegedly owed to Mr. Walker.

On January 5, 2004, Ben and Albany filed separate answers. Ben also filed a counterclaim against Gene and Michalee. In his counterclaim, Ben alleged that he paid Gene $26,000 to purchase Gene's shares of Albany and, therefore, Gene no longer had any shareholder rights or ownership interest in Albany. Thus, Ben sought a judgment in the amount of $26,000, if the court found that Gene did retain an interest in Albany.

On September 9, 2004, the day of trial, Ben filed a motion to dismiss stating that Ben's payment to Gene was in full accord and satisfaction for Gene's ownership interest in Albany. In his motion, Ben alleged that, because Gene was no longer a shareholder, Gene did not have standing to request an accounting. Before the trial began, the parties advised the court that Mr. Walker's claim for breach of contract had been settled.[4] The trial court then heard evidence on the remaining two counts of Gene and Michelee's petition and Ben's counterclaim.

On September 15, 2004, the trial court issued its judgment. Specifically, the court held that by indorsing Ben and Karen's check for $26,000, and retaining the proceeds thereof, Gene no longer had any interest in Albany. Consequently, the court concluded that Gene did not have standing to bring a claim for an accounting. Likewise, because Gene had no interest in Albany, the court resolved count II, which requested an injunction, in favor of Ben. The trial court further ruled that Michalee had no claim against Albany because any rights she acquired in Albany were without the knowledge and consent of Albany. Consequently, the trial court found that any claim she might have would be against Gene rather than Albany.[5] Finally, the court ruled in favor of Gene and Michalee on Ben's counterclaim. The trial court also dismissed all of Mr. Walker's claims because they had been settled. Gene and Michalee filed this appeal.

## Standard of Review

In a judge-tried case, this court will affirm the trial court's judgment unless no substantial evidence supports it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court reviews the evidence, along with all reasonable inferences,

4. Mr. Walker is not a party to this appeal.

5. Gene and Michalee do not appeal the trial court's decision with respect to its finding that Michalee does not have a claim against

Albany. Therefore, this court will discuss their point on appeal in terms of whether Gene had standing to request an accounting of Albany's corporate records.

in the light most favorable to the trial court's judgment and disregards all contrary evidence and inferences. *Wildflower Cmty. Ass'n, Inc. v. Rinderknecht*, 25 S.W.3d 530, 534 (Mo.App. W.D.2000). As the trier of fact, the trial court determines the credibility of witnesses and is free to believe or disbelieve all or part of the witnesses' testimony. *Stulz v. Citizen's Bank & Trust Co.*, 160 S.W.3d 423, 427 (Mo.App. W.D.2005).

### Lack of Standing to Bring Claim

In their sole point on appeal, Gene and Michalee assert that the trial court's judgment finding that Gene lacked standing to pursue his claims for an accounting and an injunction was not supported by substantial evidence. In particular, they claim that there was no substantial evidence to show that Gene intentionally or voluntarily relinquished his shareholder rights in Albany because (1) Gene told Ben on at least two occasions that his ownership interest in Albany was not for sale, and (2) before cashing the check for $26,000, Gene wrote on the check that it was received in "partial payment" for his interest in Albany.

■ Under section 351.215.1, "each shareholder of a corporation may inspect the corporate books."[6] *Kelley v. Heritage Nat'l Bank*, 897 S.W.2d 96, 97 (Mo. App. E.D.1995). The statutory right of shareholders to inspect corporate records, however, extends only to "*current* shareholders, not former shareholders." *Id.* (emphasis added). Thus, whether Gene had standing to pursue a claim for an accounting depends on whether Gene was a current or former shareholder when he requested an accounting of Albany's corporate records.

In this case, there is no dispute that in March 2000, Gene paid $22,500 to purchase shares of stock in Albany. Thus, at that time, Gene became a stockholder of the company.[7] Gene formally requested an accounting of Albany's corporate records on December 16, 2002. The trial court, however, found that Gene had no standing to pursue a claim for an accounting because in April 2002, Gene indorsed the $26,000 check from Ben and Karen, deposited it into his bank account, and retained the funds. Consequently, the trial court found that, through these acts, Gene "*waived* any interest that he had in Albany[.]" (Emphasis added).

■ In their claim of error on appeal, Gene and Michalee argue that the trial court decided this case on the legal theory of "waiver." They claim that insufficient evidence supports a finding of "waiver," which they correctly note is the intentional or voluntary relinquishment of a known right. *See, e.g., Horne v. Ebert*, 108 S.W.3d 142, 147 (Mo.App. W.D.2003). Rather, they argue that the evidence demonstrated that Gene did not intend to relinquish his rights in Albany because he expressly stated that his shares were not for sale and he placed a restrictive indorsement on the $26,000 check before cashing it, indicating that he was accepting

---

**6.** In relevant part, section 351.215.1 states: "Each shareholder may at all proper times have access to the books of the company, to examine the same, and under such regulations as may be prescribed by the bylaws."

**7.** The parties do dispute, however, the percent of ownership interest Gene purchased. Gene claims that he purchased a 12¼% inter-

est in Albany, while Ben claims that Gene purchased a 9% interest. The trial court, however, has " 'absolute discretion as to the credibility of witnesses,' " and where there is conflicting evidence, this court defers to the trial court's determinations. *McAllister v. McAllister*, 101 S.W.3d 287, 290–91 (Mo.App. E.D.2003) (citation omitted).

payment only in "partial" payment for his ownership interest in Albany.

■■■ Although the trial court did state that Gene "waived" his interest in Albany, it is clear from the context of the court's decision that the essence of its ruling was based on the legal theory of a completed contract for the sale of shares of stock in Albany. "In construing a judgment, a court must examine and consider the language of the judgment in its entirety. The intent of the court must be determined from all parts of the judgment, and words and clauses are to be construed according to their natural and legal import." *Woodfill v. Shelter Mut. Ins. Co.,* 878 S.W.2d 101, 103 (Mo.App. S.D.1994) (citation omitted). While the trial court's judgment may have used a poor choice of words when it stated that Gene "waived" his interest in Albany, it is clear that the basis of the trial court's decision was that by cashing the $26,000 check and retaining the proceeds, Gene accepted Ben's offer to purchase Gene's entire ownership interest in Albany and, therefore, gave up (or "waived") any rights associated with being a shareholder. In other words, the trial court essentially found that in April 2002, Gene sold his entire interest in Albany. Therefore, on December 16, 2002, when Gene formally demanded an accounting of Albany's corporate records, Gene was not a current shareholder and, consequently, did not have standing to demand an accounting. Accordingly, this court will address Gene and Michalee's point in the proper context of the trial court's ruling, i.e., whether a valid contract for the sale of Gene's entire ownership interest in Albany was executed, thereby making Gene merely a former shareholder of Albany with no standing to demand an accounting.

■■■ A valid contract for sale must include the three basic elements of a contract: offer, acceptance, and consideration.

*Luebbert v. Simmons,* 98 S.W.3d 72, 77 (Mo.App. W.D.2003). As to the first element, an offer must be definite and has been " 'made when the offer leads the offeree to reasonably believe that an offer has been made.' " *Volker Court, LLC v. Santa Fe Apartments, LLC,* 130 S.W.3d 607, 611 (Mo.App. W.D.2004) (citation omitted). In other words, an offer is " 'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.' " *Id.* (quoting RESTATEMENT (SECOND) OF CONTRACTS, section 24 (1981)).

■ In this case, on April 18, 2002, at the end of Ben and Gene's phone conversation, Ben indicated that he was going to send Gene a check for $26,000 to purchase Gene's shares of stock in Albany. A few days later, Gene received a check, signed by Karen, for $26,000. The check contained a restrictive indorsement stating: "Endoser [sic] acknowledges full and coplete [sic] purchase of all interest in Albany Home Sales Inc. of Albany, Mo. A Mo. Corporation by Ben & Karen Rogers. Endorser is seller, stock purchase." In addition, the memo line of the check stated, "buyout of 9% ownership via stock purchase Albany Home Sales Inc."

Ben's phone conversation, along with the check containing the restrictive indorsement, contained clear and definite terms, which would have led a reasonable person to believe that an offer to enter an agreement to purchase was being made. The language in the indorsement indicates this is an offer for a "full and coplete [sic]" sale of *"all interest* in Albany," and that it was an offer to "buyout" Gene's interest in Albany. (Emphasis added.) Moreover, the additional language in the concluding sentence of the restrictive indorsement provides sufficient clarification that an offer to purchase Gene's shares of stock in

Albany was intended. Specifically, the final sentence of the indorsement reads, "[e]ndorser is seller, stock purchase." In placing such an indorsement on the check, Ben clearly manifested his willingness to enter into a contract to purchase Gene's entire interest in Albany and that Gene's mere indorsement of the check was "invited" and would "conclude" the deal. *Id.* Thus, this court finds that Ben's statement during Ben and Gene's phone conversation, in combination with the $26,000 check sent to Gene, constituted an offer to purchase Gene's entire ownership interest in Albany.

Once an offer has been made, the second basic element for the existence of a contract is acceptance. *Id.* A contract requires an unequivocal and "mirror-image" acceptance. *Id. See also New Medico Assocs., Inc. v. Snadon,* 855 S.W.2d 489, 491 (Mo.App. S.D.1993). In other words, "[a]cceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." RESTATEMENT (SECOND) OF CONTRACTS, section 50(1) (1981).

Here, Ben and Karen's offer to purchase Gene's entire ownership interest in Albany invited Gene to accept the offer by indorsing the $26,000 check. When Gene signed his name above the restrictive indorsement placed on the check by Ben, Gene indicated that he accepted the offer in a manner invited by the offeree, i.e., indorsement of the check. Nevertheless, Gene now claims that he did not intend to accept Ben's offer to purchase Gene's shares because he verbally told Ben that his shares were not for sale.

A determination of whether Gene accepted Ben's offer, however, "depend[s] upon what is actually said and done and not upon the understanding or supposition of one of the parties." *Gateway Exteriors, Inc. v. Suntide Homes,*

*Inc.,* 882 S.W.2d 275, 279 (Mo.App. E.D. 1994). Thus, while Gene may have indicated at one point in time that his shares were not for sale, Gene's acts of signing the $26,000 check and retaining the proceeds therefrom were an unequivocal indication that he had changed his mind and decided to accept Ben's offer to purchase his entire ownership interest in Albany. In addition, the trial court has " 'absolute discretion as to the credibility of witnesses and the weight of their testimony is a matter for the trial court[.]' " *McAllister v. McAllister,* 101 S.W.3d 287, 291 (Mo. App. E.D.2003) (citation omitted). The trial court is "free to accept or reject all, part, or none of the testimony of a witness." *Id.* Consequently, the trial court was free to disbelieve Gene's testimony that he consistently told Ben that his shares were not for sale.

Gene also claims that he did not intend to accept Ben's offer because he added his own restrictive indorsement to the check before he deposited it into his account. Specifically, under Ben and Karen's restrictive indorsement, Gene added a restrictive indorsement, which stated that it was only for "partial payment for ownership in Albany Home Sales." Gene asserts that his additional indorsement on the back of Albany's check indicates that he "clearly expected to continue to assert [shareholder] rights to which he was entitled." Thus, in effect, Gene argues that his acceptance of Ben's offer was not valid because it was not the "mirror-image" of Ben's offer. Consequently, without a valid acceptance, Gene essentially argues that there could not have been a valid contract for the sale of his entire ownership interest in Albany.

An essential element to the formation of a valid contract is a " 'meeting of the minds of the contracting parties

regarding the same thing, at the same time.'" *New Medico Assocs.*, 855 S.W.2d at 491 (citation omitted). A valid contract cannot be found based on the secret intentions of one of the parties, but must rely on the objective outward acts of both parties involved. *McKee Constr. Co. v. Stanley Plumbing & Heating Co.*, 828 S.W.2d 700, 706 (Mo.App. S.D.1992).

This court's decision in *McKee* is particularly instructive. In that case, the plaintiff, McKee Construction Company, had done excavation work for Stanley Plumbing & Heating Company. 828 S.W.2d at 701. After a dispute arose regarding McKee's work and the amount Stanley owed Mr. McKee, Stanley's attorney sent a letter with a check for $19,570.75 to Mr. McKee's attorney. *Id.* The letter stated that the check was "in full payment of all claims by Mr. McKee for work done.... Acceptance and negotiation of this check will be considered a full and final release of any claims that he may have against Stanley...." *Id.* The letter also stated that if Mr. McKee did not agree, that he should return the check. *Id.* Mr. McKee then indorsed and cashed the check. *Id.* Before doing so, however, McKee added a restrictive indorsement to the back of the check. *Id.* The restrictive indorsement added by Mr. McKee stated: " 'Under protest and with full reservation of rights to collect the balance owing.'" *Id.* After Mr. McKee cashed the check, he filed a lawsuit to collect the balance due under the contract. *Id.* The trial court granted Stanley's motion for summary judgment finding that Mr. McKee's acceptance of the check constituted an accord and satisfaction. *Id.*

On appeal, Mr. McKee argued that the trial court erred in granting summary judgment to Stanley because, in cashing the check, he did not intend the check to be a full and final settlement because of the restrictive indorsement he placed on the check. *Id.* at 706. In particular, Mr. McKee argued that his restrictive indorsement created a factual dispute over whether there had been a "meeting of the minds." *Id.* In rejecting Mr. McKee's argument, this court found that Stanley's offer was for full and final payment of any claim that Mr. McKee might have against Stanley. *Id.* In cashing the check, this court found that Mr. McKee accepted Stanley's condition that the proceeds constituted a full and final settlement. *Id.* Specifically, this court held that one party to a contract cannot change the terms by "forming a contrary subjective intent, ... 'cross[ing] his fingers', and adding a restrictive endorsement and cashing the check."[8] *Id.* Consequently, this court affirmed the trial court's judgment in favor of Stanley. *Id.* at 707.

Similarly, in this case, Ben's restrictive indorsement indicated that by indorsing the check, Gene was selling his entire ownership interest in Albany. Gene complied with those terms by indorsing and cashing the check. Thus, Gene's actions constitute an acceptance of Ben's offer. If Gene intended to modify the terms of the offer, he could not do so secretly by placing his own restrictive indorsement on the check. Gene's unilateral act of placing a second restrictive indorsement on the check, without providing notice to Ben, Karen, or Albany, did not invalidate Gene's acceptance of Ben's offer. *Id.* at 706–07.

---

**8.** The court's holding on this issue is consistent with its ruling with respect to the doctrine of accord and satisfaction under both the Uniform Commercial Code and the common law, in that it serves the purpose of promoting "fairness by protecting the bona fide expectations of a debtor who tenders payment on condition that it will be accepted as payment in full." *McKee,* 828 S.W.2d at 705.

The final element necessary to the formation of a valid contract is consideration. "Consideration exists where there is a detriment to the promisee or a benefit to the promisor." *Citibank (South Dakota), N.A. v. Wilson,* 160 S.W.3d 810, 813 (Mo.App. W.D.2005). Consideration "may consist of some right, interest, profit, or benefit accruing to one party, or some forbearance, loss, or responsibility given, suffered, or undertaken by the other party." *Id.*

In this case, both Gene and Ben incurred a detriment and received a benefit as a result of the transaction. Gene benefited by receiving $26,000, while giving up something of value, which was his ownership interest in Albany. Similarly, Ben benefited by receiving Gene's ownership interest in Albany, while giving up $26,000. This is sufficient to meet the requirements for consideration to support a contract for the sale of Gene's ownership interest in Albany. *Id.*

In sum, this court finds that there was substantial evidence to support the trial court's finding that there was a contract for the sale of Gene's entire ownership interest in Albany. On April 19, 2002, Ben and Karen made an offer to Gene to purchase Gene's entire interest in Albany through the presentation of a $26,000 check. On April 26, 2002, when Gene indorsed the $26,000 check and retained its proceeds, Gene accepted the offer and, therefore, sold his entire ownership interest in Albany. Consequently, on December 16, 2002, when Gene formally requested an accounting of Albany's corporate records, he was not a *current* shareholder in Albany. Accordingly, Gene did not have standing to bring a claim for an accounting, under section 351.215.1, and the trial court did not erroneously apply the law. Moreover, Gene fails to cite any authority regarding his right to seek an injunction against Albany to enjoin the sale of Albany's property and assets. Without authority to the contrary, the analysis regarding why Gene lacks standing to seek an accounting appears equally applicable to Gene's claim for an injunction. Therefore, this court also finds that the trial court did not err in ruling in favor of Ben on Count II of Gene and Michalee's petition, which sought an injunction against Albany to enjoin the sale of Albany's property and assets.

The trial court's judgment is affirmed.

All concur.