**WOMEN'S CARE SPECIALISTS, LLC, Appellant/Plaintiff,**

v.

**Katherine TROUPIN, Respondent/Defendant.**

**No. ED 99002.**

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 17, 2013.

---

Bryan E. Brody, Clayton, MO, for appellant.

Katherine Troupin, St. Peters, MO, for respondent.

ANGELA T. QUIGLESS, Judge.

## I. INTRODUCTION

Plaintiff Women's Care Specialists, LLC ("WCS"), appeals the judgment of the Circuit Court of St. Charles County in favor of Defendant Katherine Troupin ("Troupin") on all four counts of WCS's petition. WCS contends the trial court erred in: (1) entering judgment in favor of Troupin on WCS's breach of contract claim in that it was against the weight of the evidence and (2) erroneously applied the law; (3) entering judgment in favor of Troupin on WCS's on-account claim because it was against the weight of the evidence; and (4) denying WCS's Motion for Summary Judgment on its breach of contract and on-account claims, as there was no genuine issue of material fact in dispute. Because the trial court erred in entering judgment in favor of Troupin on WCS's action on account, that portion of the trial court's judgment is reversed. Accordingly, the cause is remanded with directions to enter judgment in accordance with this opinion on WCS's on-account claim only. In all other respects, the judgment is affirmed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

It is undisputed that Troupin entered into a Financial Agreement with WCS for

medical services. On July 31, 2008, Defendant appeared at WCS's office for a procedure. The device to be used in the procedure was at the office. However, the procedure was postponed until November 13, 2008. Troupin returned to WCS's office on November 13, 2008. According to Troupin, on this date she informed WCS that she added a new insurance carrier (MEGA Life) as secondary insurance, but she did not tell WCS to cancel her Blue Cross/Blue Shield Insurance. Troupin alleges that WCS represented to her that Blue Cross/Blue Shield would be billed for the device, but not the November 13, 2008 procedure.

WCS subsequently billed Troupin $898.00 for the device and procedure. WCS contends that it did not bill Blue Cross/Blue Shield for the "service," and that Mega Life declined coverage.[1] According to Troupin, despite WCS's previous assurance, it never billed Blue Cross/Blue Shield for the device.

WCS filed a petition against Troupin seeking payment of the unpaid balance under Case Number 11–CV06493. The trial court set the matter for trial on October 17, 2011. In the interim, the parties signed an undated Stipulation of Settlement ("Stipulation"). Pursuant to the Stipulation, Troupin was to pay WCS $1,000 on or before November 17, 2011, and upon receipt of this payment, WCS would deem the debt satisfied in full and file a dismissal without prejudice in Case Number 11–CV06493. According to Troupin, on October 17, 2011, WCS was to file the Stipulation with the court, and request a continuance to December 5, 2011. The trial court, however, dismissed the case without prejudice for failure to prosecute, as WCS and Troupin failed to appear. In response, WCS filed a motion to set aside the court's dismissal, and several days later filed the Stipulation with the court on the dismissed case. When Troupin did not make payment according to the terms of the Stipulation, WCS then filed a motion to enforce the settlement. After a hearing, the trial court denied WCS's motion to set aside the dismissal.[2]

WCS then filed the petition which is the subject of this appeal. WCS's petition alleged a breach of contract pertaining to the Stipulation (Count I). In the alternative, WCS pled an action on account (Count II), for medical services provided to Troupin.[3] WCS filed a Motion for Summary Judgment, which was denied by the trial court after a hearing. On August 13, 2012, a bench trial was held.

At trial, WCS presented the testimony of Ms. Denise Martin ("Ms. Martin"), office coordinator for WCS. Ms. Martin testified that the charges for the July 31, 2008, and November 13, 2008 office visits were reasonable, and related to services requested by and provided to Troupin. Ms. Martin also testified that WCS did not bill Blue Cross/Blue Shield for Troupin's November service, as Troupin no longer had coverage on that date.

Troupin, acting *pro se,* testified at trial. Troupin admitted that she requested and received the medical services, and that she signed the Financial Agreement. Troupin

1. WCS did bill Blue Cross/Blue Shield for the office visit on July 31, 2008. Blue Cross/Blue Shield remitted payment to WCS for a portion of those charges, and only the adjusted balance remains outstanding, as part of the amount sought by WCS on account.

2. The record does not reflect that the trial court ruled on WCS's Motion to Enforce the Stipulation.

3. The petition also alleged quantum meruit (Count III), and unjust enrichment (Count IV) causes of action, which are not at issue in this appeal.

stated that WCS had assured her it would bill Blue Cross/Blue Shield for the device, but failed to do so. Troupin also testified that, when the parties signed the Stipulation, WCS informed her that it would file the Stipulation with the trial court on October 17, 2011, and she would not have to appear. Troupin stated that WCS did not uphold its end of the agreement, as it did not enter the Stipulation with the court, and the case was dismissed for failure to prosecute.

The trial court issued judgment in favor of Troupin on all counts. WCS appeals.

## III. DISCUSSION

### A. Legal Standard

██ "In a court-tried case, we will affirm the judgment below if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." *Reppy v. Winters*, 351 S.W.3d 717, 720 (Mo.App. W.D.2011) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). We view the evidence in the light most favorable to the trial court's judgment, disregarding all contrary inferences and evidence. *Woods ex rel. Woods v. Cory*, 192 S.W.3d 450, 458 (Mo.App. S.D. 2006). We "defer[ ] to the trial court's findings of fact, recognizing the superior ability of the trial court to judge the credibility of the witnesses." *Id.*

### B. Points I and II—Stipulation of Settlement

██ In its first point on appeal, WCS contends the trial court erred in entering judgment in favor of Troupin on WCS's breach of contract claim because the judgment was against the weight of evidence. WCS claims that Troupin breached the Stipulation agreement when she failed to

pay WCS $1,000 by November 17, 2011. In its Judgment, the trial court concluded that "the parties disagreed on the purpose for signing this Stipulation at the start, and therefore it fails as a contract." WCS, however, argues that the evidence establishes that the Stipulation was a legal, valid, and enforceable contract. WCS maintains that the Stipulation itself, Troupin's acknowledgement at trial that she signed it, as well as Troupin's responses to WCS's Requests for Admissions constitute proof that a contract existed.[4]

██ Settlement agreements are contracts and subject to contract law. *Emerick v. Mut. Benefit Life Ins. Co.*, 756 S.W.2d 513, 518 (Mo. banc 1988) (citing *DeWitt v. Lutes*, 581 S.W.2d 941, 945 (Mo. App. S.D.1979)). "In Missouri, the general rules of contract construction apply when interpreting settlement agreements." *Pierson v. Kirkpatrick*, 357 S.W.3d 293, 299 (Mo.App. S.D.2012) (citing *Park Lane Med. Ctr. of Kan. City, Inc. v. Blue Cross/ Blue Shield of Kan. City*, 809 S.W.2d 721, 724 (Mo.App. W.D.1991)). "A legal, valid settlement agreement must possess all the essential elements of any other contract." *Id.* (citing *Tirmenstein v. Cent. States Basement and Foundation Repair, Inc.*, 148 S.W.3d 849, 851 (Mo.App. E.D.2004)). "The essential elements of a contract are: (1) competency of the parties to contract; (2) proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation." *Id.* at 299–300 (citing *Arndt v. Beardsley*, 102 S.W.3d 572, 575 (Mo.App. S.D.2003)). At issue here is the fourth element, mutuality of agreement.

██ "The term 'mutuality of agreement' implies a mutuality of assent by the parties to the terms of the contract, i.e., a

---

**4.** Troupin did not file a Respondent's brief with the Court.

meeting of the minds." *Id.* (citing *Arndt,* 102 S.W.3d at 575). *See Voyles v. Voyles,* 388 S.W.3d 169, 172 (Mo.App. E.D.2012). An essential element to the formation of a valid contract is a "meeting of the minds of the contracting parties regarding the same thing, at the same time." *Walker v. Rogers,* 182 S.W.3d 761, 768–69 (Mo.App. W.D. 2006) (quoting *New Medico Assocs., Inc. v. Snadon,* 855 S.W.2d 489, 491 (Mo.App. S.D.1993)). A court determines a meeting of the minds "by looking to the intention of the parties as expressed or manifested in their words or acts." *J.H. v. Brown,* 331 S.W.3d 692, 702 (Mo.App. W.D.2011) (quoting *Gateway Exteriors, Inc. v. Suntide Homes, Inc.,* 882 S.W.2d 275, 279 (Mo.App. E.D.1994)).

■ "Courts of this state have held that whether there was a meeting of the minds is a question of fact for the trial court to decide." *Don King Equip. Co. v. Double D Tractor Parts, Inc.,* 115 S.W.3d 363, 368 (Mo.App. S.D.2003) (citing *Dickemann v. Millwood Golf & Racquet Club, Inc.,* 67 S.W.3d 724, 728 (Mo.App. S.D. 2002)). "We defer to the findings of fact in a court-tried case, but we make an independent evaluation of the conclusions of law the trial court draws from its factual findings." *Id.* at 369 (citing *Porter v. Falknor,* 895 S.W.2d 187, 189 (Mo.App. E.D.1995)).

The parties signed the Stipulation, which included the following relevant terms: (1) "[Troupin] agrees to pay $1,000.00 to [WCS] by November 17, 2011"; (2) "Upon receipt of the $1,000.00 on or before November 17, 2011, [WCS] will satisfy the debt in full and will file a dismissal without prejudice of the above-captioned case"; (3) "If payment of $1,000.00 is not received by November 17, 2011 from [Troupin], [she] understands and agrees that [WCS] may file a Motion to Enforce Settlement...."

The Stipulation explicitly included Case Number 11–CV06493 in its caption.

According to Troupin, WCS was to file the Stipulation with the court on October 17, 2011, as Case Number 11–CV06493 was scheduled for trial. WCS did file a motion for continuance, but did not file the Stipulation or appear for trial, and the court dismissed the action without prejudice for failure to prosecute. WCS filed a motion to set aside the dismissal, and a few days later, filed the Stipulation with the court on the dismissed case. Subsequently, Troupin failed to pay pursuant to the Stipulation, and WCS filed a motion to enforce the settlement. The court held a hearing, and denied the motion to set aside the dismissal.

WCS then filed a petition, alleging Troupin breached the Stipulation by failing to pay $1,000. In response to a discovery request, Troupin admitted that the Stipulation was genuine and accurate, but denied that the Stipulation was a "binding contract."

At trial, Troupin acknowledged that she signed the Stipulation. Troupin testified that the agreement stipulated "that if something happened on another side," she would pay, but she also stated that "the other end was not upheld." When asked "[w]hat specific thing ... Plaintiff did not do on the stipulation of settlement," Troupin responded that WCS "did not enter the stipulation of settlement to the court." Troupin further testified that the parties had exchanged emails which established that WCS was going to enter the Stipulation with the court. Troupin added that she signed the Stipulation so she "would not have to appear back here in this courthouse taking time away from [her] business." Troupin explained that WCS's counsel assured her that the only way to avoid having to appear, was to sign the Stipulation.

The trial court found that there was no meeting of the minds as to the parties' purposes for signing the Stipulation. Viewing the evidence in a light most favorable to the trial court's judgment, the filing of the Stipulation before trial was a fundamental assumption upon which Troupin based her agreement. At trial, substantial evidence was adduced that Troupin signed the Stipulation so that WCS would enter it with the court before trial on October 17, 2011, and she would no longer need to appear. In evaluating a "meeting of the minds," a court looks to the intent of the parties as manifested in their words or acts. Here, Troupin testified that emails were exchanged, and assurances were made by WCS's counsel regarding the filing of the Stipulation. At trial, Troupin maintained that WCS did not "uphold their end." Further, we defer to the trial court's superior ability to discern Troupin's credibility regarding her purpose in entering into the Stipulation. *See Woods ex rel. Woods*, 192 S.W.3d at 458.

■ As such, there is substantial evidence supporting the trial court's finding that the parties disagreed on the purpose of the Stipulation. Without a meeting of the minds, there is no mutuality of agreement, and no contract. Thus, the trial court's judgment in favor of Troupin as to WCS's breach of contract claim is not against the weight of the evidence.[5] Point I is denied.

■ In its second point on appeal, WCS contends the trial court erroneously applied the law in entering judgment in favor of Troupin on WCS's breach of contract claim. WCS argues that the trial court erred in considering the parties' purposes in entering into the Stipulation. WCS contends that the Stipulation is complete on its face, and does not contain a term requiring it to be filed with the court. As such, WCS maintains that there is no ambiguity and no "legally viable reason to look at evidence beyond the text of the document."

■ "A determination as to whether a [contract] is ambiguous is a question of law to be decided by the court." *Alack v. Vic Tanny Int'l. of Mo., Inc.*, 923 S.W.2d 330, 337 (Mo. banc 1996) (citing *Royal Banks of Mo. v. Fridkin*, 819 S.W.2d 359, 361 (Mo. banc 1991)). "Ambiguities in written instruments may be of two kinds: (1) patent, arising upon the face of the documents, and (2) latent." *Royal Banks*, 819 S.W.2d at 362 (citing *Busch & Latta Painting Corp. v. State Highway Comm'n*, 597 S.W.2d 189, 197 (Mo.App. W.D.1980)). "A 'latent ambiguity' arises where a writing on its face appears clear and unambig-

5. Furthermore, we note that, as the original action was dismissed for failure to prosecute by the trial court, not by WCS as called for in the Stipulation, WCS cannot establish a required element in a breach of contract action-that claimant performed pursuant to the contract. *See Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010) ("A breach of contract action includes the following essential elements: (1) the existence and terms of a contract; (2) that plaintiff *performed or tendered performance pursuant to the contract*; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff.") (citation omitted) (emphasis added). Therefore, even if the trial court's conclusion that there was no "meeting of the minds," based upon the evidence presented and the credibility of the witnesses at trial, is erroneous, the judgment should be affirmed. *See Bus. Men's Assur. Co. of Am. v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999) (concluding that a correct result will be affirmed even if the trial court gave wrong or insufficient reasons for its judgment); *Ehrle v. Bank Bldg. & Equip. Corp. of Am.*, 530 S.W.2d 482, 490–91 (Mo. App.1975) (citing *Godsy v. Godsy*, 504 S.W.2d 209, 211 (Mo.App.1973)) ("it is well-settled that the judgment of the trial court, even if based on an incorrect theory, should be affirmed, if, on the evidence, such a result could properly have been reached").

uous, but some collateral matter makes the meaning uncertain." *Id.* (citing *Boswell v. Steel Haulers, Inc.,* 670 S.W.2d 906, 912 (Mo.App. W.D.1984)). "Where a contract is ambiguous, recourse must be had to evidence of external matters, bearing in mind the cardinal principle that the object is to determine the true intent of the parties." *Boswell,* 670 S.W.2d at 913. "Appropriate for consideration are the relationship of the parties, the circumstances surrounding execution of the contracts, the subject matter of the contracts, the acts of the parties in relation to the contract and any other external circumstances which would cast light on the intent of the parties." *Id.* (citing *N.B. Harty Gen. Contractors, Inc. v. W. Plains Bridge and Grading Co., Inc.,* 598 S.W.2d 194, 197 (Mo.App. S.D.1980)).

Here, uncertainty arises as case number 11–CV06493 was dismissed by the trial court in a manner not contemplated by the Stipulation. The court's dismissal of the original case, for failure to prosecute, calls into question the term of the Stipulation requiring WCS to dismiss the action after receiving payment from Troupin. Thus, the trial court's dismissal, prior to WCS's anticipated performance, is a collateral matter that makes the meaning of the Stipulation uncertain, creating latent ambiguity. The trial court's consideration of external matters was appropriate to determine the intent of the parties. Point II denied.

## C. Point III—Action on Account

In its third point on appeal, WCS states that the trial court erred in entering judgment in favor of Troupin on WCS's on-account claim, because it was against the weight of the evidence, as WCS proved that Troupin requested and received services, and that her medical charges were reasonable. Troupin asserted at trial that the charges were not reasonable because WCS failed to bill Blue Cross/Blue Shield. WCS argues that this theory is not supported by the weight of the evidence. Further, WCS maintains that the Financial Agreement signed by Troupin states that she is "financially responsible for the balance," and such payment is "not contingent upon any insurance, settlement or judgment payment."

"An action on account is based on contract." *Dyna Flex Ltd. v. Charleville,* 890 S.W.2d 413, 414 (Mo.App. E.D. 1995) (citing *Helmtec Indus., Inc. v. Motorcycle Stuff, Inc.,* 857 S.W.2d 334, 335 (Mo.App. S.D.1993)). "To make a submissible case, the plaintiff must prove that (1) defendant requested plaintiff to furnish merchandise or services, (2) plaintiff accepted defendant's offer by furnishing such merchandise or services, and (3) the charges were reasonable." *Id.* (citing *Helmtec,* 857 S.W.2d at 335).

Troupin admitted that she requested and received services from WCS. At trial, WCS's office coordinator, Ms. Martin, testified that the charges were reasonable. Troupin, in her testimony, conceded the reasonableness of several individual charges on her bill, but argued that WCS did not properly bill Blue Cross/Blue Shield for the medical device. We find there is sufficient evidence to establish all three elements of WCS's on-account action.[6]

However, the trial court based its judgment in favor of Troupin as to WCS's

---

6. Although Troupin disputes the reasonableness of the charges based upon WCS's alleged failure to bill Blue Cross/Blue Shield, we note that the record does not establish when Troupin's Blue Cross/Blue Shield coverage ceased, nor is there evidence that Blue Cross/Blue Shield would have reimbursed WCS for the device, had WCS timely sought payment.

on-account claim, on a provision in the Financial Agreement between the two parties. In its judgment, the trial court referenced the following language from the Financial Agreement: "If I do not have insurance, I will be considered a Private Pay (or Self Pay) patient and I am financially responsible for the total amount of the services provided." The court reasoned that "[c]onversely if Defendant Troupin *did have insurance,* she will not be responsible for the total amount of the services provided." The court found that, as Troupin did have insurance, she was not responsible for paying the insurance portion of the bill.

 The trial court interpreted the single provision of the Financial Agreement cited above to exclude patients with insurance coverage from financial responsibility for the total amount of services provided. We cannot agree. "Courts must give effect to the plain, ordinary, and usual meaning of a contract's words and consider the document as a whole." *ND–Sell, Inc. v. Greater Springfield Bd. of Realtors, Inc.,* 224 S.W.3d 623, 628 (Mo. App. S.D.2007) (citing *Jackson County v. McClain Enter., Inc.,* 190 S.W.3d 633, 640 (Mo.App. W.D.2006)). "Each term is construed to avoid an effect that renders other terms meaningless." *Stacey v. Redford,* 226 S.W.3d 913, 917 (Mo.App. S.D.2007) (citing *Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 428 (Mo. banc 2003)). "A construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function or sense." *Id.* (citing *Dunn,* 112 S.W.3d at 428).

In the section entitled "Financial Responsibility," the Financial Agreement states: "I understand that in consideration of the services provided to the patient, I am directly and primarily responsible to pay the amount of all charges incurred for services rendered ... I further understand that such payment is *not contingent on any insurance,* settlement or judgment payment." The Financial Agreement also includes the following language: "[WCS] *may* file a claim for payment with my insurance company as required by contractual agreement. If the insurance company fails to pay [WCS] in a timely manner *for any reason* then I understand that I will be responsible for prompt payment of all amounts owed to [WCS]." These provisions establish that the patient is financially responsible for all amounts owed after application of any insurance payments. The provision that the trial court relied on merely clarifies that a *Private Pay* patient is responsible for the full amount because no insurance proceeds will be applied to the patient's account.

Because the trial court's reading of the Private Pay provision renders other contractual provisions meaningless, we conclude that the trial court's judgment in favor of Troupin, as to WCS's on-account claim, was erroneous. We reverse the trial court's judgment. Point III is granted.

### D. Point IV—Denial of Motion for Summary Judgment

In its fourth point on appeal, WCS requests review of the trial court's denial of its Motion for Summary Judgment on its breach of contract and on-account claims. However, the Court need not reach this point as full relief was granted on point III, WCS's action on account.

### IV. CONCLUSION

Because the trial court erred in entering judgment in favor of Troupin on WCS's action on account, that portion of the trial court's judgment is reversed. Accordingly, the cause is remanded with directions to enter judgment in accordance with this

opinion on WCS's on-account claim only. In all other respects, the judgment is affirmed.

MARY K. HOFF, P.J., and KURT S. ODENWALD, J., concur.