**Clyde R. WELLS and Ruth M. Wells, Plaintiffs–Appellants,**

**v.**

**Howard CARPENTER and Beverly Carpenter, Defendants–Respondents.**

**No. 20269.**

Missouri Court of Appeals, Southern District, Division Two.

Feb. 14, 1996.

Cary C. Selsor, Joplin, for appellants.

Paul G. Taylor, Susan D. McDonald, Myers, Taylor, and Whitworth, Joplin, for respondents.

SHRUM, Chief Judge.

This case concerns a prescriptive easement claim. The trial court determined that the plaintiffs, Clyde R. Wells and Ruth M. Wells (Appellants), did not have an easement acquired by prescription entitling them to walk across land owned by the defendants, Howard Carpenter and Beverly Carpenter (Respondents). This appeal followed. We affirm.

Respondents own a parcel of land between two parcels owned by Appellants. At least as far back as the 1950s, all three parcels of land were owned by Appellants' family. However, the middle parcel was sold off and was ultimately purchased by Respondents in 1956. To get from the parcel on which their residence is located to the other parcel, which they rent out, Appellants have walked across Respondents' back yard for more than 30 years.

Appellants, who built their home "at the outbreak of Wor[l]d War II," neither asked nor were given permission to cross the middle parcel by any of Respondents' predecessors in title. Appellants never asked Respondents' permission to cross their land, nor have Respondents ever explicitly given it.

In 1993, Respondents erected several "No Trespassing" signs on their property, ostensibly to protect themselves from premises liability. A confrontation over the signs ensued, and Appellants subsequently filed suit asking the court to declare the existence of an easement by prescription across Respondents' property, linking their residential parcel to their rental parcel.

After a brief bench trial, the court entered a judgment finding that Appellants had failed to meet the burden of proof necessary to establish a prescriptive easement. Appellants filed a motion for new trial, which was heard, after which the trial court entered a final judgment again stating that Appellants had failed to satisfy the necessary burden of proof. Specifically, the court found that Appellants' use was permissive as opposed to adverse, and "[f]urther, and in any event, [Appellants] have not shown a legal description sufficiently definite to acquire a prescriptive easement across the property in question."

Appellants appeal from that judgment, which we must affirm "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 [1] (Mo. banc 1976). Our review is undertaken with the knowledge that the law does not favor prescriptive easements and that the necessary elements for their establishment must be proven by clear and convincing evidence.

*Moss v. Ward,* 881 S.W.2d 238, 241[2] (Mo. App.1994).

On appeal, Appellants do not challenge the court's finding that they had not shown a description sufficiently definite to acquire an easement ("location issue"), but instead limit their argument to the permissive/adverse use issue and a request for attorney fees stemming therefrom.

■■■ Appellants' abandonment of the location issue in their brief means that they have conceded it, and therefore we are not compelled to consider it. *City of Lee's Summit v. Browning,* 722 S.W.2d 114, 115 (Mo. App.1986). Moreover, we may affirm the court's judgment on the location issue alone since " 'the judgment of the trial court must be affirmed if it is correct on any theory.' " *Id.* (citing *Rosenblum v. Gibbons,* 685 S.W.2d 924, 927 (Mo.App.1984). Appellants' failure to argue the location issue leaves it as an independent basis for affirmance. *Id.* (citing *May Dept. Stores Co. v. County of St. Louis,* 607 S.W.2d 857, 868–69 (Mo.App.1980)).

Although Appellants have abandoned the location issue, we nonetheless exercise our discretion and review such question under the plain error standard of Rule 84.13(c)[1]. This we do in order to determine if manifest injustice or a miscarriage of justice has resulted from the judgment.

■■■ "To establish a prescriptive easement, it is necessary to show use that has been continuous, uninterrupted, visible and adverse for a period of ten years." *Whittom v. Alexander–Richardson,* 851 S.W.2d 504, 508 [8] (Mo. banc 1993); *Speer v. Carr,* 429

S.W.2d 266, 268 [2] (Mo.1968). For a use to be "continuous" it is necessary that there "be no break in the essential attitude of the mind required for adverse use." *Whittom,* 851 S.W.2d at 508 [10]. "[W]hen a way is claimed by prescription, the character and extent of it is fixed and determined by the use under which it is gained. Any material change in its use during the course of the prescriptive period interrupts and may prevent the acquisition of the right." *Riggs v. City of Springfield,* 344 Mo. 420, 126 S.W.2d 1144, 1149[4] (banc 1939). *See also Peterson v. Medlock,* 884 S.W.2d 679 (Mo.App.1994).

■ An overriding requirement for establishing a prescriptive easement is "[e]vidence which will enable the easement to be located...." *Dillon v. Norfleet,* 813 S.W.2d 31, 32[1] (Mo.App.1991). *See also Teson v. Vasquez,* 561 S.W.2d 119, 127 (Mo.App.1977).[2]

■■■ At trial, Appellants' counsel endeavored to locate the easement through the testimony of Mr. Wells, who pointed at and marked on photographs in an attempt to indicate the location of the alleged path. For instance, while pointing at one photograph, Mr. Wells testified: "And these—this table and chairs that they have put out in the pathway—it goes right direct through there." However, there is no testimony that one could actually see a "pathway" in the photographs.[3] The lack of an exact location of a "pathway" is revealed in this same direct examination:

"Q. Would you take this marker to make a mark on it and show *approximately* where you crossed.

---

1. Rule 84.13(c) reads: "(c) ... Plain errors ... may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

2. While *Teson,* cited by *Dillon,* is an adverse possession case, *Homan v. Hutchison,* 817 S.W.2d 944 (Mo.App.1991), explains how the location requirement is equally applicable in prescriptive easement cases:

"The method by which prescriptive rights are acquired is akin to the acquisition of title to real estate by adverse possession.... In the adverse possession context, the exact location of the disputed lands with precise ascertain-

able and recognizable boundaries is necessary lest a judgment be rendered void as based on speculation and conjecture.... The analogy to adverse possession is useful in [a prescriptive easement] case."

*Id.* at 948. (citations omitted).

3. No exhibits are before this court. "When exhibits are omitted from the transcript and are not filed with the appellate court, the intendment and content of the exhibits will be taken as favorable to the trial court's ruling and as unfavorable to the appellant." *Shadow Lake of Noel, Inc. v. Supervisor of Liquor Control,* 893 S.W.2d 835, 839[7] (Mo.App.1995). Therefore, we will not infer that there was a discernable path in the photographs.

A.  Okay.  I did.

Q.  Like this?

A.  Yes." (Emphasis ours.)

After further direct examination of Mr. Wells attempted to establish the position of various landmarks in the photographs, the following testimony took place:

"A.  . . . So I'm *60 to 70* feet behind their house when I go through there."

. . .

Q.  Well, give us—give the Court *an idea* of where you're asking the Court to allow you to cross, where you believe you're asking the Court to make a prescriptive easement for you to cross.

A.  On this picture right here, it would be right direct through here.  Just like that.

Q.  Okay.  And in terms of your property—

A.  When I make the curve, that's on my property.  But that over there—there is a tree right there.  And there is a straight line right through there, right behind their garage and their junk pile.

Q.  The Court probably can't make a determination based on that.  *Approximately where*—as far as your property—the front of your property, to the back, *approximately how far back does that lie?*

A.  From my—

Q.  The front of your property.

A.  From the house back to the line?  *It's probably 60 feet, 70 feet, somewhere in that neighborhood.*

Q.  Around 60 feet back?

A.  Yeah.

Q.  And—

A.  *I'm just guessing on that.* "  (Emphasis ours.)

Neither this nor any other testimony offered by Appellants locates the easement or even demonstrates that a specific path exists, as opposed to an unspecified area.  The description offered by Appellants is vague and indef-

4.  Paragraph 8 in Appellants' petition reads as follows:
  "That the path described above runs from west to east across the entire width of [Respondents'] property; that the path on the east side of [Respondents'] property begins 132' south of

inite—by its own words an "approximation" or "guess."  The only description with any sort of specificity is contained in Appellants' petition,[4] which Appellants' counsel referenced in his direct examination of Mr. Wells:

"Q.  Okay.  Let me ask you—well, I want you to look at paragraph 8 of your petition.  Would this accurately describe where you're asking the Court to make your easement?

A.  Yes, it does.

Q.  Okay.  So you're asking the Court to give you a prescriptive easement as specified in your petition—

A.  Yeah.

Q.  —is that correct?  When you used this—

A.  I measured that so I know *about* what that is."

(Emphasis ours.)

This evidence does not establish that a path existed at a specific location—much less where it was alleged to be—rather, it merely recaps the relief requested.  Neither does any evidence establish with any specificity the width or course of the path as alleged.  Measuring the easement one wants is not the same as measuring and proving the existence and location of a path used continuously for ten years in the same location.

█  Finally, we note that this record contains substantial evidence to support a finding that the courses travelled by Appellants in crossing Respondents' land were of impermanent character and significantly deviated over the years.  *See Behen v. Elliott,* 791 S.W.2d 475, 477 (Mo.App.1990).  In particular, we note Appellant Clyde Wells' response to the following question:

"Q.  Isn't it true that at various times you have crossed in the back yard of [Respondents'] property at a location other than this path you've been describing?

A.  I probably have walked all over it back there."

[Respondents'] north boundry [sic] line;  that the path runs in a slight southwesterly direction and ends 146' south of the north boundry [sic] line on the west side of their property; that the easement is 4' in width."

Such testimony permits the inference that there were repeated and continued breaks in Appellant's attitude regarding his right to a defined pathway that followed a specific course across Respondents' property. *See Whittom*, 851 S.W.2d at 508.

In summary, substantial evidence supported the trial court's finding that Appellants had not shown a sufficiently definite description of the easement they sought. Finding no plain error on this issue, we will not disturb the trial court's finding that "[Appellants] failed to satisfy the burden of proof necessary for the court to declare the establishment of an easement by prescription."

Because the trial court's decision on the location issue is supported by substantial evidence, there is no reason to consider the other points of error raised concerning the permissive/adverse use issue and the request for attorney fees. *City of Lee's Summit*, 722 S.W.2d at 116.

The judgment is affirmed.

PREWITT, P.J., and PARRISH, J., concur.