William and Ruth **HARRISON,** Husband and Wife, Respondents,

v.

Keith L. **DEHEUS,** a single person, Appellant,

and

**Junior E. Waggener and Blanche E. Waggener, Trustees of The Junior E. Waggener and Blanche E. Waggener Revocable Living Trust, Defendants.**

No. 28162.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 14, 2007.

---

Ronald K. Carpenter, Camdenton, for Appellants.

Daniel C. Mizell, Asst. Atty. Gen., Lebanon, for Respondents.

**ROBERT S. BARNEY,** Presiding Judge.

Keith L. DeHeus ("Appellant") appeals the judgment of the trial court which granted Respondents William and Ruth Harrison ("the Harrisons") a prescriptive easement over a roadway ("the Old Roadway") traversing certain property located in Harmony Cove subdivision near the Lake of the Ozarks in Camden County, Missouri, and which also granted an injunction ordering Appellant to remove obstructions and refrain from building additional obstructions on the Old Roadway.[1] In his two points relied on Appellant asserts the trial court erred in finding there was a prescriptive easement because the Harrisons "failed to offer evidence of the exact location of the 'Old Roadway,'" and also erred by finding the Harrisons "were protected by the Statute of Frauds and not bound by their oral agreement...." We affirm the judgment of the trial court.

Viewing the record in the light most favorable to the trial court's judgment, *Southern Star Central Gas Pipeline, Inc. v. Murray,* 190 S.W.3d 423, 429 (Mo.App. 2006), the record reveals that all of the parties to this matter own real property in Harmony Cove subdivision near the Lake of the Ozarks. It appears that in 1975 Junior Waggener ("Mr. Waggener") and his wife, Blanche Waggener (collectively "the Waggeners"), purchased several acres in Harmony Cove subdivision.[2] At that time, the Old Roadway, which was not paved, traversed the property of all the parties and was used by the landowners for ingress and egress to their properties

---

1. We note that in addition to the parties named above James C. Tomlinson and Geraldine L. Tomlinson, Trustees of the James C. Tomlinson and Geraldine L. Tomlinson Revocable Living Trust ("the Tomlinsons"), were also named as defendants in the Harrisons' Second Amended Petition. The Tomlinsons were dismissed from the lawsuit prior to trial. Further, only Appellant participates in this appeal.

2. Also, in 1992, the Waggeners purchased a piece of property adjacent to the Harrisons' property.

although there was no legal documentation relating to this use. In 1985, the Harrisons purchased their property which is located South of the Waggeners' property; the Harrisons then commenced utilizing the Old Roadway for access to their property. In 2000, Mr. Waggener sold a piece of property adjacent to the Harrisons' property to Appellant's predecessors in interest. In 2001, Appellant bought this property through which a portion of the Old Roadway traverses.

The record further reveals that the year prior to Appellant's purchase of his property, Mr. Waggener had approached Mr. Harrison about Mr. Waggener's desire to pave the Old Roadway and vary its course across the Waggener property so that a home could be constructed close to the lakefront. Thereafter, Mr. Waggener constructed a new roadway ("the New Roadway") that was paved and took a different path across the Waggeners' property other than the Old Roadway. While the parties then utilized the New Roadway for ingress and egress the record also shows that the Harrisons also continued using the Old Roadway for ingress and egress.

In 2002, Appellant constructed a deck on his home which was located directly over a portion of the path of the Old Roadway.

On March 11, 2003, the Harrisons seasonably filed their Second Amended Petition against Appellant, the Tomlinsons, and the Waggeners. Their petition requested declaratory relief in the form of a prescriptive easement for use of the Old Roadway because the Old Roadway had "been used by [the Harrisons] and [their] predecessors in title as a means of ingress and egress to [their] property for the last fifty (50) years" and that use "has been open, visible, notorious, adverse, under a claim of right and for a continuous and uninterrupted period in excess of ten (10) years." Further, in their Second Amend-

ed Petition they requested the ejectment of Appellant, who, due to his deck, "is currently in possession of the [Old] Roadway and has denied [the Harrisons'] use of said [Old] Roadway." Additionally, the Harrisons requested an injunction enjoining Appellant from "further construction in the [Old] Roadway."

The record also reveals that a joint counterclaim was filed by Appellant and the Waggeners, "in the nature of a breach of contract" or "in the nature of specific performance." As best we can discern from the record, it appears that the joint counterclaim was brought in an effort to enforce an oral contract Mr. Waggener averred he had entered into with Mr. Harrison and which purportedly provided that the Harrisons agreed to abandon the Old Roadway if Mr. Waggener built the New Roadway. Mr. Waggener asserts he relied on this agreement with Mr. Harrison when he constructed the New Roadway. Thus, Appellant and the Waggeners requested the trial court determine that the Harrisons had an oral agreement with Mr. Waggener wherein they agreed to stop using the Old Roadway and, if indeed there was a prescriptive easement to use the Old Roadway, to abandon it in favor of the New Roadway.

A trial was held on July 17, 2006. Ruth Harrison ("Mrs. Harrison") described the Old Roadway as composed of gravel; it was the "only way in and out;" and "it had been in existence since the early 1930's." She stated she did not think they had to ask permission to use it because "everyone used it." She also related that the Tomlinsons would sometimes have the road graded and they paid the Tomlinsons for a portion of the bill for the grading. She stated they also brought in rock to fill in portions of the road that had washed out. Mrs. Harrison related there was a fifteen foot section of the Old Roadway that was

steep, but after the hill "it levels off and is a nice grade the rest of the way up." She also related that at the time she and Mr. Harrison purchased their property they utilized the Old Roadway to access the county road."[3] She also admitted that while they did not have a legal instrument or any kind of documentation expressly permitting them to use the Old Roadway, nevertheless, from 1985 until the New Roadway was constructed in 2000, they used the Old Roadway to ingress and egress their property. She also related that none of the property owners had ever "voice[d] any displeasure with [the Harrisons'] use of the [O]ld [R]oadway."

Mrs. Harrison also testified that in 1999 she had overheard a part of a conversation between her husband and Mr. Waggener about paving the Old Roadway. She related Mr. Waggener asked Mr. Harrison, " 'Would it be okay if I paved [the Old Roadway]?' " and Mr. Harrison responded, " 'It's your property. You can concrete the whole thing if you wanted, as long as you leave that road down in front of the houses.' " According to Mrs. Harrison, in 1999 or 2000 Mr. Waggener paved the Old Roadway and altered its path across what is now Appellant's property, thus, creating the New Roadway. Mrs. Harrison also testified that after the New Roadway was constructed, Mr. Waggener came to her house with a $30,190.00 bill for the construction of the road and told her he "would appreciate anything [she] c[ould] give [him] . . ." towards the bill. The Harrisons told Mr. Waggener they were not going to contribute to the building of the New Roadway.

Mrs. Harrison also related she first learned from a neighbor in February of 2002 about Appellant's plans to block the Old Roadway by building a deck over a portion of the roadway. She stated she called Appellant on several occasions and left a message but he never called her back. Mrs. Harrison stated that when Mr. Harrison finally spoke with Appellant, Appellant told the Harrisons he would "think about" his plans for the Old Roadway. According to Mrs. Harrison, Appellant later phoned them and said, " 'Go to hell. I'm going to do whatever I damn please.' " She recounted that Appellant thereafter constructed a deck across the Old Roadway, which forced the Harrisons to solely use the New Roadway for ingress and egress. Mrs. Harrison stated she never agreed to exclusively use the New Roadway and never agreed to stop using the Old Roadway. She related that the New Roadway, which is concrete, does allow access to their property, but she does not like to use it. She testified that, if given a choice, she would prefer to use the Old Roadway because the New Roadway is "very steep" and "very dangerous." She stated Appellant should be forced to remove the deck over the Old Roadway because the Old Roadway had always been safely traversed and the New Roadway is not safe.

Mr. Harrison testified that since their purchase of the lake house in 1985 the only way to access the property was via the Old Roadway. Mr. Harrison stated he never agreed to use the New Roadway instead of the Old Roadway. He repeated that he told Mr. Waggener that he could "put concrete anywhere [he wanted] to" "on his property" as long as he did not interfere with the Old Roadway's usage. He went on to state he told Appellant and Mr. Waggener that he had no intention of us-

---

**3.** At trial, in describing both the New Roadway and the Old Roadway, the witnesses referred to "Exhibit A," a plat of Harmony Cove subdivision, which contained metes and bounds descriptions and township and range notations.

ing the New Roadway and was going to continue using the Old Roadway.

Mr. Waggener testified he purchased his property in 1975. He stated that the Old Roadway on his property was in a slightly different location at that time and that when he built his home he changed the location of the road. He stated that as long as he had lived there the Harrisons and their predecessors in interest, the Baughmans, used the Old Roadway for ingress and egress. Mr. Waggener also related the Harrisons had been continuously using the Old Roadway from 1985 until 2001 or 2002. He stated he made the New Roadway in 1999, at which time he also owned Appellant's property. He testified that prior to constructing the New Roadway he had a conversation with Mr. Harrison about the Old Roadway. He related he asked Mr. Harrison "[i]f [he] put [the New Roadway] in … if [Mr. Harrison] would use it, and then [Mr. Waggener] could do away with the [Old Roadway]…. Because [he] was thinking about building a house, and [he] wanted to build it down close to the water." He testified he told Mr. Harrison he would put the road in and "didn't know whether [he would] blacktop it or concrete it … but [he] would do one or the other if [Mr. Harrison] would use it." According to Mr. Waggener, Mr. Harrison told him that "[i]f [he] put it in there and [fixed] it so [the Harrisons] can get in there," he would use it. Mr. Waggener opined that he felt Mr. Harrison had accepted his proposal and proceeded to construct the New Roadway. He stated he would not have spent the money constructing the New Roadway if Mr. Harrison had not agreed to use it.

Mr. Waggener also related that Mr. Harrison made an oral agreement with him to stop using the Old Roadway and that his use of the New Roadway illustrated his intent to abandon the Old Roadway.

Mr. Waggener admitted, however, he had no such agreement with Mrs. Harrison. He also related nothing was in writing and that there was no written easement or documentation supporting the oral agreement.

Appellant testified he purchased his property in Harmony Cove subdivision in 2001 and that the Harrisons' property bordered his property to the South. He stated since he purchased his property he had always used the New Roadway. He also related the Old Roadway across his property was not gravel and, instead, was "[j]ust a grass path, it was two dirt tracks." He stated he had never seen the Harrisons utilize the Old Roadway, but he could tell it "had been used sometimes." Appellant also related that it was his impression that the New Roadway "is steep for a longer …" distance, but he felt the Old Roadway "is just as steep in certain places…." He stated he had never had any problems traveling on the New Roadway.

Appellant also testified that in January of 2002 he began constructing a new deck over the path of the Old Roadway. He stated the Harrisons never contacted him about the construction and he never spoke to them about it. He also related that during construction he received a letter from the Harrisons' attorney asking him to stop building the deck, but he continued the project.

At the close of all the evidence, the trial court took the matter under advisement. On July 31, 2006, the trial court entered its Findings of Fact, Conclusions of Law and Judgment. In its Findings of Fact and Conclusions of Law the trial court found that a prescriptive "dominant estate in the Old Roadway has vested in the [Harrisons] by reason of the [Harrisons'] use of the Old Roadway" and "[t]hat [Appellant and the Waggeners] ha[ve] a servient estate in

the Old Roadway;" there was no oral agreement between Mr. Waggener and Mr. Harrison regarding the Harrisons' relinquishment of "any rights to a prescriptive easement use to the Old Roadway ..." and "even if there was an oral contract between ..." Mr. Waggener and Mr. Harrison "whereby in consideration of his building the new road, [the Harrisons] would give up their prescriptive easement rights to the Old Road[way], it would be in violation of the Statute of Frauds;" and the Harrisons are "entitled to a mandatory injunction, enjoining [Appellant and the Waggeners] from building any structures or obstacles on or across the Old Roadway and to remove any structures and obstacles from the Old Roadway." The trial court's judgment denied the Harrisons' request for ejectment and denied the joint counterclaim filed by Appellant and the Waggeners. Accordingly, the trial court set out the legal description for the prescriptive easement defining the Old Roadway and taxed the costs of litigation to Appellant and the Waggeners. This appeal by Appellant followed.

■ When reviewing an action for a declaratory judgment, our standard of review is the same as in any other court tried case. *Beavers v. Recreation Ass'n of Lake Shore Estates, Inc.*, 130 S.W.3d 702, 708 (Mo.App.2004). "The standard of review in a court-tried case is set out in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *Id.* The judgment will be affirmed unless it is against the weight of the evidence, there is insufficient evidence to support it, or it erroneously declares or applies the law. *Id.* "This Court will set aside the trial court's decision only when firmly convinced that the judgment is wrong." *Landwersiek v. Dunivan*, 147 S.W.3d 141, 146 (Mo.App.2004).

■ We accept as true the evidence and reasonable inferences therefrom in favor of the prevailing party and disregard the contrary evidence. *Evans v. Werle*, 31 S.W.3d 489, 491 (Mo.App.2000). "This Court should defer to the trial court in judging the credibility of witnesses and resolving conflicting evidence." *Blackburn v. Habitat Dev. Co.*, 57 S.W.3d 378, 385 (Mo.App.2001). "Great deference is given to a trial court on 'factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record.'" *Landwersiek*, 147 S.W.3d at 146 (quoting *SD Invs., Inc. v. Michael–Paul, L.L.C.*, 90 S.W.3d 75, 85 (Mo.App.2002)). "An appellate court defers to the trial court when there is conflicting evidence, even if there is evidence which would support a different conclusion." *Id.*

■ In his first point of trial court error Appellant maintains the trial court erred in granting the Harrisons a prescriptive easement over the Old Roadway "because the judgment of the trial court is not supported by substantial evidence in that [the Harrisons] failed to offer evidence of the exact location of the 'Old Roadway.'" In his argument supporting this point relied on Appellant asserts that while their proposed findings of fact and conclusions of law submitted to the trial court contained a legal description of the Old Roadway, the Harrisons "failed to plead or introduce into evidence the precise boundaries of the property claimed thereby."

■ "An overriding requirement for establishing a prescriptive easement is 'evidence which will enable the easement to be located.'" *Wells v. Carpenter*, 916 S.W.2d 405, 407 (Mo.App.1996) (quoting *Dillon v. Norfleet*, 813 S.W.2d 31, 32 (Mo.App. 1991)). Here, while there was no specific legal description entered into evidence re-

lating to the physical location of the Old Roadway, as previously related, there was extensive reference at trial to "Exhibit A," a plat of Harmony Cove subdivision, which contained metes and bounds descriptions; township and range notations; and notations regarding the "Point of Beginning" and the "Point of Ending."

The transcript also reveals that all of the witnesses referred to this same "Exhibit A" during their testimony when they discussed the location of the Old Roadway and the New Roadway. All of the witnesses referenced and recognized the location of the Old Roadway, which was marked in yellow on "Exhibit A," and the New Roadway, which was marked on "Exhibit A" in pink. Furthermore, Appellant, himself, testified that "Exhibit A" was "a pretty fair representation" of the area and identified the location of the roadways at issue by the color that had been denominated for "Exhibit A." Additionally, the parties stipulated to the admission of "Exhibit A" prior to trial and both sides used the exhibit during the presentation of their case to the trial court.

The record also reveals there was no dispute at the time of trial as to the physical location of the Old Roadway and the New Roadway. While the trial court may have adopted the written legal description of the Old Roadway from the Harrisons' proposed findings of fact and conclusions of law, it also could have properly constructed the legal description from the face of "Exhibit A" by utilizing all of the detailed plat information thereon. As previously related, at trial the parties did not dispute the physical location of the Old Roadway; the dispute was whether or not the Harrisons had a prescriptive easement over that roadway. *See Harmon v. Hamilton*, 903 S.W.2d 610, 615 (Mo.App.1995) (holding that "[t]he trial court was required to describe the road with some particularity. There was no dispute in the evidence about the general location of the road.... The real issue was whether Respondents were entitled to a prescriptive easement, not the location of the roadway").

The trial court included a legal description of the Old Roadway in its judgment which was based on " 'evidence which will enable the easement to be located.' " *Wells*, 916 S.W.2d at 407 (quoting *Dillon*, 813 S.W.2d at 32). There was sufficient evidence to support the judgment in the present matter. Point denied.

 In his second point on appeal Appellant maintains the trial court erred in finding the Harrisons "were protected by the Statute of Frauds [4] and not bound by their oral agreement ..." with Mr. Waggener. He maintains the trial court misapplied the law "in that the evidence presented at trial indicates Appellant clearly relied on the oral agreement in performing part of the agreement and equity should not allow [the Harrisons] [to repudiate] the agreement so as to perpetrate a fraud on [Appellant]." According to Appellant, there was a valid oral agreement between Mr. Waggener and Mr.

---

4. Section 432.010, regarding the Statute of Frauds, sets out:

No action shall be brought ... upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, or any lease thereof, for a longer time than one year ... unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract.

All statutory references are to RSMo 2000.

Harrison and the Statute of Frauds should not be applied because it is inapplicable to situations where the contract has been fully performed.[5]

■ We need not reach the Statute of Frauds argument raised by Appellant. Here, the trial court specifically found "no oral contract exists...." Appellant fails to challenge the trial court's finding that there was no oral contract between Mr. Waggener and Mr. Harrison. This is fatal to Appellant's Statute of Frauds argument because application of the Statute of Frauds is predicated on a finding that there was an oral contract and, here, there was no such finding.

■ The first element of proof required for an oral contract to convey land is that "'the alleged oral contract must be clear, explicit, and definite.'" *Estate of Munzert*, 887 S.W.2d 764, 768 (Mo.App. 1994) (quoting *Walker v. Bohannan*, 243 Mo. 119, 147 S.W. 1024, 1028 (1912)). The asserted oral agreement in the present matter between Mr. Harrison and Mr. Waggener lacks these elements of proof based on the testimony of the parties.

Here, there was testimony from Mrs. Harrison that she overheard the conversation in 1999 between Mr. Waggener and Mr. Harrison. She testified Mr. Waggener asked if Mr. Harrison had a problem with his paving the Old Roadway across his land and varying its course so he could build a home closer to the lake. Mrs. Harrison heard Mr. Harrison tell Mr. Waggener that he could do whatever he wanted on his own property *as long as the road would remain useable.* Mr. Harrison provided the same testimony. Further,

the Harrisons testified they never agreed to stop using the Old Roadway and preferred using it to the New Roadway due to safety concerns. While Mr. Waggener testified that Mr. Harrison had agreed to abandon the use of the Old Roadway for the New Roadway this Court defers to the trial court determinations relating to witness credibility and factual conflicts in the evidence. *Landwersiek*, 147 S.W.3d at 146. The trial court was free to believe the testimony of the Harrisons and to disbelieve Mr. Waggener. *Blackburn*, 57 S.W.3d at 385.

We cannot say that the trial court erred in determining there was insufficient proof of the formation of an oral agreement. *See Munzert*, 887 S.W.2d at 768. In view of our standard of review under *Murphy v. Carron*, we find there was substantial evidence to support the trial court's determination that Mr. Harrison and Mr. Waggener did not enter into an oral agreement whereby Mr. Harrison agreed to abandon using the Old Roadway in favor of the New Roadway. *See id.* Point denied.

The judgment of the trial court is affirmed.

LYNCH, C.J., and RAHMEYER, J., concur.

---

5. We note Appellant filed a reply brief in this matter, however, his reply brief raised the issue of promissory estoppel for the first time on appeal. "A reply brief, as permitted by Rule 84.04, is to be used solely to 'reply' to arguments raised by respondents, not to raise new points on appeal." *Lawson v. Emerson Elec. Co.*, 833 S.W.2d 467, 471 (Mo.App. 1992), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 229 (Mo. banc 2003). Accordingly, we do not address that issue in this appeal.