Thomas M. KELLS, Appellant,

v.

MISSOURI MOUNTAIN PROPERTIES, INC., Charles Aultman, Citizens National Bank, and Leland L. Gannaway, Respondents.

No. 28364.

Missouri Court of Appeals, Southern District, Division Two.

March 10, 2008.

Thomas M. Kells, Pro Se.

Lee J. Viorel, for Respondents Citizens National Bank and Leland L. Gannaway.

Paul G. White, Springfield, for Missouri Mountain Properties Inc, Charles Aultman.

DON E. BURRELL, Judge.

This action arises from a breach of contract claim brought by Thomas M. Kells (Kells) against Missouri Mountain Properties, Inc., Charles Aultman (Aultman), Citizens National Bank (Citizens Bank), and Leland L. Gannaway (Gannaway) (collectively Citizens). Kells alleged that Citizens Bank and Gannaway had not properly disbursed the proceeds of a foreclosure sale as required by certain deeds of trust and a subsequent written agreement. The trial court denied Kells' claim and he now appeals.

### Standard of Review

This case was tried to the court without a jury. The standard of review in a court-tried case is set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). This court will affirm the trial court's judgment unless it is against the weight of the evidence, there is insufficient evidence to support it, or it erroneously declares or applies the law. *Id.* at 32. The judgment of the trial court is presumed to be correct and the burden is upon the appellant to demonstrate that it is erroneous. *Robertson v. Robertson*, 15 S.W.3d 407, 411 (Mo. App. S.D.2000). "We accept as true the evidence and reasonable inferences therefrom in favor of the prevailing party and disregard the contrary evidence." *Harrison v. DeHeus*, 230 S.W.3d 68, 74 (Mo.App. S.D.2007). Viewed in that light, the relevant facts are as follows:

### Facts

In April of 1997, Citizens Bank lent $1,250,000 to Butcher Holler, Inc. (Butcher). Ken and Nevon Lowe (the Lowes) were the sole shareholders of Butcher and they executed personal guarantee agreements on all debts owed by Butcher to Citizens Bank. The loan was also secured by three deeds of trust on three different parcels of property identified as Tract I, Tract II, and Tract III. Each of the three tracts was owned by either Butcher or the Lowes.

In August of 1998, Butcher borrowed an additional $202,967 from Citizens Bank and the Lowes again personally guaranteed the loan. The new loan was also secured by deeds of trust on Tracts I and II. In October of 1998, Citizens Bank loaned Butcher another $50,000 secured by yet another deed of trust on Tract I. Leland Gannaway, an attorney who represented Citizens Bank at the time the three loans were made, served as the trustee on the three deeds of trust. By July of 1999, Butcher and the Lowes were having problems making their loan payments. In November of 1999, the Lowes and Butcher received a notice of foreclosure as to Tracts I and II.

A foreclosure sale on Tracts I and II occurred on December 8, 1999. At that sale, the two tracts were sold as a whole to Charles Aultman for $1,550,000. The $50,000 deed of trust was not included in the foreclosure. On December 16, 1999—eight days after the foreclosure sale—a written agreement was entered into between Butcher, Citizens Bank, and Mis-

souri Mountain Properties[1] (Missouri Mountain), a corporation formed by Aultman, as to how the proceeds of the foreclosure sale would be distributed. Two written documents were actually prepared in an attempt to memorialize the terms of the parties' agreement. The first document was entitled "Agreement," was dated on its first page as having been entered into on December 13, 1999, and was signed on that same date by Charles Aultman on behalf of Missouri Mountain and by Ken Lowe on behalf of Butcher (Agreement # 1). Agreement # 1 also included a signature block for Citizens Bank but no representative of the bank ever signed Agreement # 1. The second document, also entitled "Agreement," was dated on its first page as having been entered into on December 14, 1999 (Agreement # 2). Agreement # 2 was signed on December 14, 1999 by Frank Hilton on behalf of Citizens Bank. Two days later, December 16, 1999, Agreement # 2 was signed by Charles Aultman on behalf of Missouri Mountain and by Ken Lowe on behalf of Butcher. Agreement # 2 made no mention of Agreement # 1 and had no language either referring to or revoking any other written or oral agreements of the parties.

The typewritten language of Agreement # 1 and Agreement # 2 was identical, but a different handwritten change had been made on each document. In paragraph 2.D(iv) located on the second page of Agreement # 1, the digit "8" in the section

reading "[t]he 1998 real estate taxes due on or before December 31, 1999" had a handwritten slash through it and a "9" had been handwritten just above and to the right of it. This change was not initialed or dated and no one testified that they were the person who had made the change. On Agreement # 2, the word "bankruptcy"[2] was marked out and the word "foreclosure" was handwritten immediately above it. No date was marked by this change, but the initials "K.L." appear beside it. This change was located on the first page of the document in paragraph 1. Gannaway testified that the parties also gave him oral instructions on how to distribute the foreclosure proceeds which differed from those set forth in the two written agreements. Specifically, Gannaway testified that the 1998 taxes had already been paid and that it was Lowe who wanted the 1999 taxes paid off so it would be easier for him to get the financing necessary to carry out his plan to buy the property back from Aultman.[3]

Under the terms of both Agreement # 1 and Agreement # 2, Gannaway was to distribute the proceeds of the foreclosure sale in the following manner: 1) pay to Citizens Bank the outstanding principal balance, unpaid interest and late charges on the $1,250,000 and $202,967 loans; 2) pay all trustee's fees and expenses; 3) pay to Citizens Bank $500 representing its fee on the $50,000 deed of trust; 4) pay several other junior liens on the properties; and 5)

---

1. From the transcript, it appears that Aultman incorporated Missouri Mountain and that one of Missouri Mountain's assets was the two tracts Aultman purchased at the foreclosure sale.

2. The word in the document itself is actually blacked out so as to be unreadable but the testimony was uncontroverted that the word stricken was "bankruptcy."

3. The attorneys for Citizens initially objected to any testimony about this unwritten agreement Lowe allegedly had with Aultman whereby Lowe would be able to buy the property back from Aultman, but eventually the matter was addressed without objection. Lowe had also delivered to Gannaway, through Lowe's attorney, a notice of intent to redeem the property just before the foreclosure sale commenced.

purchase a $50,000 certificate of deposit from Citizens Bank in the name of Missouri Mountain.[4]

$1,466,165.91 of the $1,550,000 payment was paid to Citizens Bank for the money due on the two deeds of trust. An additional $50,000 was paid to Citizens Bank for the certificate of deposit, $7,808.84 was paid to Gannaway for trustee's fees, and $4,098.58 was paid to the county collector to cover what Gannaway thought was the total amount of the 1999 real estate taxes on the two tracts. Several months later, an additional $21,926.67 was paid to the county collector toward the 1999 property taxes owed on the two tracts. No protest to this distribution was ever made by Butcher or the Lowes.

In early 2000, in exchange for $10 and "other good and valuable consideration," Butcher assigned to Kells any and all claims it might have arising from the trustee's sale of Tracts I and II.

■ An assignment serves to transfer all or part of one's interests or rights. *Ford Motor Credit Co. v. Allstate Ins. Co.,* 2 S.W.3d 810, 812 (Mo.App. W.D.1999). As such, Kells gained whatever rights or interests Butcher had. Kells claims that the $50,000 paid to Citizen's Bank and the $26,025.25 paid to the county collector (a total of $76,025.25) constituted excess, surplus proceeds from the foreclosure sale and, pursuant to the terms of the applicable deeds of trust, should have been paid to Butcher. As the assignee of Butcher, Kells brought the action below asserting

that he, by way of assignment from Butcher, is entitled to receive those proceeds.

The $1,250,000 deed of trust provided that, in the event of a foreclosure sale, any excess or surplus proceeds shall be paid "to the person or persons legally entitled thereto." The $202,967 deed of trust directed the trustee, in the event of a foreclosure sale, to pay "the surplus, if any, to Grantor." Butcher is defined as the "Grantor" within the deeds.

After a bench trial on Kells' claim, the trial court entered a judgment in favor of Citizens. The judgment found that the excess proceeds from the foreclosure sale had been distributed by Gannaway in accordance with the written and oral directives given by Ken Lowe and that Lowe had accepted the benefits of that distribution without objection prior to his assignment to Kells of any rights he might have.[5] Kells appeals from that judgment and raises three points of alleged error.

### Point I

■ Kells initially argues that the trial court erred in its judgment for Citizens because he had established his *prima facie* case that surplus funds existed after the trustee's sale. Kells claims that he presented evidence of the surplus proceeds and that, under the language of the deeds of trusts, Butcher was entitled to receive any excess proceeds from the sale. Citing to *Hautly Cheese Co. v. Wine Brokers, Inc.,* 706 S.W.2d 920 (Mo.App. W.D.1986), Kells asserts that once he made a *prima*

---

4. This certificate of deposit was pledged by Missouri Mountain to cover a continuing liability of Butcher and the Lowes on a $50,000 road bond obligation that was secured by a lien against Tract I.

5. The trial court also found that Kells was estopped from recovering on his claim because his assignor had raised no objection to

the distribution of the proceeds at the time it was made. As appellant did not challenge this finding in his brief and the matter may be resolved on the grounds he has raised, we do not reach the issue of whether or not appellant's claim would be barred by any principles of equitable estoppel.

*facie* case, the burden shifted to Citizens to prove any affirmative defenses.

In making this argument, Kells ignores the actual judgment of the trial court. The trial court did not find that Kells had failed to make his *prima facie* case, rather it found that Citizens and Butcher had entered into a subsequent agreement that controlled the distribution of any excess proceeds from the sale and that the surplus had been disbursed according to the terms of that agreement. As Kells challenges a finding that the trial court did not make, this Court has nothing to review. Kells' first point is denied.

### Point II

■ Kells asserts that the trial court erred in finding that Agreement # 2 was a valid agreement because Citizens failed to prove that it contained all of the elements necessary to constitute an enforceable contract.[6] Kells admits that if a subsequent agreement on how to distribute the excess proceeds from the foreclosure sale was a valid contract, then that agreement, and not the original deeds of trust, would control the distribution.

■ "Generally, contracts may be modified as to particular provisions or have new terms engrafted thereon, yet stand as to the residue of the original agreement." *MECO Systems, Inc., v. Dancing Bear Entertainment, Inc.,* 42 S.W.3d 794, 803 (Mo.App. S.D.2001). In order for a modification of a prior contract to be enforceable, it must be based on mutual assent and supported by consideration. *Id.* "Consideration exists where there is a detriment to the promisee or a benefit to the promisor." *Citibank (South Dakota), N.A. v. Wilson,* 160 S.W.3d 810, 813 (Mo.App. W.D.2005). Consideration may consist of a loss, forbearance, or responsibility given or undertaken by one party, or a profit, benefit, right, or interest accruing to another party. *Walker v. Rogers,* 182 S.W.3d 761, 770 (Mo.App. W.D. 2006). Even a small consideration is sufficient to support a contract. *Missouri Dept. of Transp., ex rel. PR Developers, Inc. v. Safeco,* 97 S.W.3d 21, 33 (Mo.App. E.D.2002).

■ Kells claims that Agreement # 2 is not supported by any consideration given to Butcher.[7] However, even under the terms of Agreement # 2, Butcher and the Lowes were released from having to pay the $500 fee that was due on the $50,000 deed of trust. This $500 was not included in the purchase price of the foreclosure sale and therefore was not taken from the excess proceeds ($1,466,165.91 + $7808.84 + $50,000 + $4098.58 + $21926.67 = $1,550,000). The $500 constituted a benefit to Butcher and the Lowes and a detriment to Citizens Bank. As such, the $500 constituted adequate consideration to support the modification of the

---

6. It should first be noted that the trial court's judgment does not state that Agreement # 2 was controlling as to the distribution of the proceeds of the foreclosure sale. As will be discussed more fully in our response to Point III herein, the trial court looked to Agreement # 1, Agreement # 2, and the testimony of witnesses to determine what the actual agreement of the parties was. But, because certain elements must be present in order to support *any* agreement to modify an existing contract, we address the issue here.

7. In his reply brief, Kells asserts for the first time that "price" was also an essential element required to be included in an agreement for it to be valid and that Citizens failed to demonstrate that Agreement # 2 contained terms setting forth a price. A reply brief is to be used only to reply to arguments raised by respondents, not to raise new arguments on appeal. Missouri Rule of Civil Procedure 84.04; *Harrison,* 230 S.W.3d at 76 n5. Therefore, we do not address this issue on appeal.

original contracts set forth in the deeds of trust.

Kells does not allege that mutual assent did not exist between the parties in forming any agreement as to the distribution of the funds. Kells' second point is denied.

### Point III

■ For his last point, Kells argues that, even if there was a subsequent agreement between the parties as to how the excess proceeds were to be distributed, Gannaway did not follow the terms of that agreement in making the distribution. Specifically, Kells claims that Agreement # 2 sets forth the exclusive terms of any subsequent agreement of the parties and that Gannaway failed to follow its terms by paying the 1999 real estate taxes on the tracts instead of the 1998 taxes and by not paying several junior liens.

Agreement # 2 directed Gannaway, as the trustee in foreclosure, to:

[p]ay the junior liens as follows:

i) Missouri Department of Revenue tax lien[.]

ii) Missouri Department of Revenue tax lien dated September 13, 1999, in the amount of $414.28, plus any accrued interest.

iii) Missouri Department of labor and Industrial Relations lien, filed August 23, 1999, in the amount of $2,368.83, plus interest.

iv) The 1998 real estate taxes due on or before December 31, 1999.

v) To the extent possible, pay any outstanding mechanics liens[.]

At trial, Gannaway testified that, as trustee, he had paid the $4,098.58 and $21,926.67 amounts to the county collector toward the 1999 real estate taxes on the tracts based on figures provided to him by Lowe. Gannaway testified that he did not pay any of the 1998 real estate taxes on the tracts because they had already been paid and that he did not pay any of the other liens listed above in parts i-v of Agreement # 2 because those liens had been extinguished as a part of the foreclosure process.

■ "The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *Mid Rivers Mall, L.L.C. v. McManmon,* 37 S.W.3d 253, 255 (Mo.App. E.D.2000) (quoting *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973)). Courts are bound to enforce a contract as written if the terms of the contract are clear, plain and unequivocal. *Malan Realty Investors, Inc. v. Harris,* 953 S.W.2d 624, 626–27 (Mo. banc 1997). However, if a contract is ambiguous, then parol evidence will be considered to determine the intent of the parties. *McManmon,* 37 S.W.3d at 256. A contract will be found to be ambiguous if its terms are susceptible to more than one meaning and reasonable persons may fairly and honestly differ as to the construction of the terms. *Eisenberg v. Redd,* 38 S.W.3d 409, 411 (Mo. banc 2001). Matters of contractual construction are reviewed de novo as a question of law. *Mackey v. Griggs,* 61 S.W.3d 312, 315 (Mo. App. S.D.2001). Whether a contract is ambiguous is a question of law to be determined by the court. *Alack v. Vic Tanny Intern. of Missouri, Inc.,* 923 S.W.2d 330, 337 (Mo. banc 1996).

Under the terms of Agreement # 2—the only written agreement signed by all of the parties subject to its terms—Gannaway was to pay the "1998 real estate taxes due on or before December 31, 1999." We find this portion of Agreement # 2 to be ambiguous on its face in that any 1998 real estate taxes on the tracts would have been due on or before December 31, *1998,* not

on or before December 31,1999. The 1999 real estate taxes on the tracts would have been the taxes due on or before December 31, 1999. We find, therefore, that reasonable persons could honestly disagree as to whether Agreement # 2 directed the trustee to pay the 1998 real estate taxes or the 1999 real estate taxes.

Where an ambiguity is found to exist, a question of fact arises as to the parties' intent that the trial court must determine by reference to parol evidence. *Monsanto Co. v. Syngenta Seeds, Inc.*, 226 S.W.3d 227, 231 (Mo.App. E.D.2007); *Eveland v. Eveland,* 156 S.W.3d 366, 369 (Mo. App. E.D.2004). Having found an ambiguity in the language of the written contract itself, we next look to evidence outside the four corners of the document to determine the actual intent of the parties. *McMannon,* 37 S.W.3d at 256.

Kells urges this Court to simply construe Agreement # 2 against Citizens because Gannaway, and not the Lowes, drafted the agreement. If a contract is ambiguous in that it is open to two or more interpretations, a court should adopt a construction against the party that drafted the contract and in favor of the party that merely signed it. *Graham v. Goodman,* 850 S.W.2d 351, 355 (Mo. banc 1993). However, this canon of contract construction is only to be applied where no other evidence of the parties' intent exists. *Id.* at 356. In the case at bar, substantial evidence of the parties' actual intent was presented.

Although the trial court does not explicitly state in its judgment that the terms of Agreement # 2 were ambiguous, such a finding is implicit because the trial court

allowed parol evidence to be admitted at trial and its final judgment [8] ascertains the parties' agreement by looking to both Agreements # 1 and # 2 and to other "oral directions." Because of the patent ambiguity in the language of Agreement # 2, the trial court correctly looked to parol evidence in order to determine the actual agreement of the parties as to which year's taxes were to be paid by the trustee. Point 3 is denied.

As we leave to the trial court all determinations of witness credibility, the Amended Judgment is supported by sufficient evidence and does not erroneously declare or apply the law. The judgment of the trial court is affirmed.

LYNCH, C.J., and RAHMEYER, J., Concur.

---

8. The trial court originally signed a judgment entitled "Findings of Fact, Conclusion and Judgment" on or about July 13, 2006. Kells filed a motion to set aside and vacate that judgment and the trial court executed a second judgment entitled "Amended Findings of Fact, Conclusion and Judgment" on or about December 4, 2006. The December 4, 2006 amended judgment is the final judgment at issue in this case.