Norma Lee **LEKANDER**, Petitioner–Appellant,

v.

In The **ESTATE OF William Robert LEKANDER, Sr., Deceased, Jason Werner Lekander, as Personal Representative of The Estate of William Robert Lekander, Sr., Deceased, Respondent–Respondent.**

No. SD 30702.

Missouri Court of Appeals,
Southern District,
Division One.

May 13, 2011.

---

James F. McLeod, Springfield, MO, for Appellant.

Leland L. Gannaway, Springfield, MO, for Respondent.

## DON E. BURRELL, Judge.

Norma Lee LeKander ("Ms. LeKander") appeals the "judgment"[1] denying her $57,700 claim against the estate of her deceased, ex-husband, William Robert LeKander, Sr. ("Mr. LeKander"). Ms. LeKander's claim sought payment of the outstanding balance of a mortgage against a house in Springfield that she and Mr. LeKander had purchased during the course of their marriage ("the home"). Mr. and Ms. LeKander divorced in April 2009.

The parties' divorce decree incorporated a "Marital Settlement and Separation Agreement" ("the settlement agreement"). The settlement agreement provided that the home would be sold and the parties would split the "proceeds." The home remained unsold at the time of Mr. LeKander's death in August 2009.

The trial court found that the settlement agreement was ambiguous as to whether Mr. LeKander was to pay (1) the entire mortgage debt or (2) the monthly mortgage payments until the home was sold, then one-half of the mortgage balance at the time of the sale. Based on this ambiguity, the trial court ultimately construed the settlement agreement against Ms. LeKander, whose attorney had drafted it.[2] The trial court denied Ms. LeKander's claim for the full mortgage balance but awarded her an amount equal to the interest she had paid on the mortgage after Mr. LeKander's death.

Ms. LeKander first asserts the trial court erred in finding the settlement agreement ambiguous because its terms were not susceptible to more than one meaning. Second, she asserts that if the settlement agreement is ambiguous, the trial court erred in construing its terms against Ms. LeKander instead of considering extrinsic evidence "to infer the parties' intent." Finding no merit in either contention, we affirm.

## Facts and Procedural Background

Ms. LeKander was the only witness at the hearing on her claim. She testified that approximately 19 years before the hearing, she and Mr. LeKander purchased the home as husband and wife. The set-

---

1. The probate commissioner heard this matter and entered a "judgment" denying Ms. LeKander's claim on July 8, 2010. Under section 472.160.1(1) and (13), an order denying a claim against an estate of more than one hundred dollars may be appealed. Under section 478.268, the judge of the probate division must reject or confirm the orders and judgments of the probate commissioner in the thirty-first judicial circuit. *Cf. Clemans v. Mercantile Bank of St. Louis, N.A.*, 936 S.W.2d 889, 890 (Mo.App. E.D.1997) (holding that the appeal should be dismissed as nothing in the record indicated that the "probate court" confirmed the commissioner's order in construing a similar statute—section 478.266—applicable in certain other circuits). Greene County is within the thirty-first judi-

cial circuit. The legal file does not include any judgment confirming the commissioner's order denying the claim. However, a copy of the confirmation judgment by the judge of the probate division, dated July 13, 2010, accompanied the notice of appeal filed with this court. The "judgment" of the probate commissioner, as confirmed by the judge of the probate division, will be referenced herein as the "order" of "the trial court." Unless otherwise indicated, all statutory references are to RSMo 2000.

2. The estate notes in its brief that Ms. LeKander is represented by different counsel in the instant case. Mr. LeKander was self-represented during the divorce trial.

tlement agreement called for Ms. LeKander to vacate the home after the dissolution. Mr. LeKander remained in the home.

After Mr. LeKander's death, Ms. LeKander entered into an arrangement with the bank that allowed her to make interest-only payments on the mortgage. Ms. LeKander made three such payments from a joint account in the name of Mr. and Ms. LeKander. Thereafter, Ms. LeKander deposited additional money into this account on five occasions for the purpose of making these payments. Ms. LeKander paid a total of $1,297.42 from her own funds to make the interest-only payments on the mortgage. Ms. LeKander testified that the mortgage balance on the home at the time of the hearing was $57,700; the original purchase price had been approximately $115,000.

■ Although exhibits numbered 1–7, consisting of the settlement agreement, a bank statement, and bank deposit receipts were admitted into evidence, they were not deposited with this court by Ms. LeKander.[3] "When exhibits are omitted from the transcript and are not filed with the appellate court, the intendment and content of the exhibits will be taken as favorable to the trial court's ruling and as unfavorable to the appellant." *Shadow Lake of Noel, Inc. v. Supervisor of Liquor Control,* 893 S.W.2d 835, 839 (Mo.App. S.D.1995).

The settlement agreement stated that the home had been owned by the couple as "tenants by the entirety." Paragraph A.2. of the settlement agreement (entitled "DIVISION OF MARITAL PROPERTY") provided that the home would be sold and "[t]he parties will divide the proceeds from the sale of the home equally with one-half going to [Ms. LeKander] and one-half going to [Mr. LeKander]." As to personal property, Ms. LeKander received the parties' 2007 Impala. Mr. LeKander was awarded two other (apparently unencumbered) vehicles, each over twenty years old. It also divided their household goods.

Paragraph C.2. of the settlement agreement (entitled "ASSUMPTION OF DEBTS AND LIABILITIES") was a table that allocated the parties' marital debts as follows:

---

**3.** Various documents, including the settlement agreement, are attached to the copy of Ms. LeKander's "Amended Claim Against Estate" contained in the legal file. These exhibits are marked with letters, not numbers. She also included copies of what purport to be copies of the trial court's judgment, "Clerk's Certificate of True Copy of Judgment and Decree of Dissolution of Marriage," "Judgment and Decree of Dissolution of Marriage," and "Marital Settlement and Separation Agreement, Marked as Exhibit A to Judgment and Decree of Dissolution of Marriage" in the appendix section of her brief. Neither of these methods are acceptable means of placing these documents properly before this court for our review. Rules 81.12(e) and 81.16 (all rule references are to Missouri Court Rules (2010)). Counsel for the estate did not object to the admission of the settlement agreement at trial and both parties' briefs agree on the relevant language of that agreement. As a result, information concerning the terms of the settlement agreement necessary to an understanding of the facts of the dispute will be taken from the version of the settlement agreement contained in the legal file, the trial court's order, the transcript, and the estate's brief. *See Lester E. Cox Med. Ctrs. v. Richards,* 252 S.W.3d 236, 238 n. 2 (Mo.App. S.D.2008) (information from exhibits not deposited with Court was "gleaned" from transcript); *In re Trust of Nitsche,* 46 S.W.3d 682, 684 (Mo.App. S.D. 2001) (fact asserted in party's brief and conceded in the other party's brief may be treated as if it appeared in the record).

| Creditor | Amount | Party Responsible |
|---|---|---|
| [Named Bank # 1] | $60,000.00 (Approximately $675.00 monthly until home is sold) | Husband |
| [Named Store] | $750.00 | Wife |
| [Named Bank # 2] | $611.12 | Wife |
| [Named Credit Union # 1] | $800.00 | Wife |
| [Named Bank # 3] | $876.69 | Wife |
| [Named Credit Union # 1] | $14,000.00 | Wife |

The $14,000 credit union loan assigned to Ms. LeKander represented the balance owed on the 2007 Impala she was receiving.

The trial court found that "the parenthetical language in the assumption of debts column states that [Mr. LeKander] is to pay $675.00 monthly until the home is sold. This additional language does create some ambiguity." The trial court went on to find that the parenthetical language was ambiguous

> as to whether Mr. LeKander was to be responsible for the entire debt or whether he was to be responsible for paying the mortgage until [the home] sold. Because [Ms.] LeKander's attorney drafted the agreement, it will be construed against the drafter. The [trial] court finds that it was the intent of the parties to 1) sell the home; 2) pay off the loan; and then 3) split the proceeds.

The trial court therefore denied Ms. LeKander's claim for the full balance of the mortgage and awarded her $1,297.42, representing a reimbursement for the interest-only payments she had made on the mortgage after Mr. LeKander's death.

## Analysis

### Point I: the Settlement Agreement was Ambiguous

■■ Ms. LeKander's first point contends the trial court "erroneously found that the [settlement agreement] was ambiguous, in that the terms are not susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of its terms." As correctly noted by Ms. LeKander, marital settlement agreements are construed using ordinary contract principles. *Wood v. Wood*, 2 S.W.3d 134, 138 (Mo.App. S.D. 1999). Whether a settlement agreement is ambiguous is a question of law. *Royalty v. Royalty*, 264 S.W.3d 679, 684 (Mo.App. W.D.2008). On such legal questions, we owe the trial court no deference and review the matter *de novo*. *Id.* at 683–84.

■■ A contract is not ambiguous simply because the parties later disagree on its meaning. *Wood*, 2 S.W.3d at 138. Rather, "[a]n ambiguity arises when it appears from the four corners of the contract that 'the terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms.'" *Royalty*, 264 S.W.3d at 684 (quoting *Eveland v. Eveland*, 156 S.W.3d 366, 369 (Mo.App. E.D. 2004)). "In determining whether or not there is such an ambiguity as calls for construction, the whole instrument must be considered." *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973). Here, the parties' dispute hinges on two provisions: (1) the use of the word "proceeds" in paragraph A.2. and (2) the parenthetical phrase "[a]pproximately $675.00 monthly until home is sold" in paragraph C.2.

Ms. LeKander suggests that "proceeds" has a plain and ordinary meaning, quoting WEBSTER'S NINTH NEW COLLEGIATE DICTIO-

NARY, 937 (9th ed.1987) (principal copyright 1983), which she says defines "proceeds" as "the total amount brought in <the [proceeds] of a sale>." What she fails to mention is that this is the first of two definitions Webster's gives the word. The second is "the net amount received (as for a check or from an insurance settlement) after deduction of any discount or charges[.]" *Id.*[4] This second definition is consistent with the argument advanced by the estate—that logic suggests "proceeds" is "what remains after the discharge of expenses attendant to the sale, such as liens or mortgages."

Ms. LeKander's argument is in the form of a triple-negative—that the settlement agreement is not ambiguous because it does not expressly state that the mortgage would not be assumed by Mr. LeKander. Additionally, she contends the agreement

> does not state "net" proceeds, nor does it state that the mortgage is to be deducted from the sale proceeds once sold. Had this been the case, the agreement would have specified, for example, as it did regarding equal division of listing expenses, that the mortgage was to be divided equally.

The estate argues that the settlement agreement contains "ambiguous and conflicting writings[.]" According to the estate, the drafter of the settlement agreement

> tentatively leads the reader to think that Mr. LeKander is assuming the entire indebtedness of $60,000 on [the home]. However, the author quickly negates that thought with language immediately following which indicates that Mr. LeKander only pays monthly payments toward the retirement of the debt "until home is sold[.]"

The estate interprets the settlement agreement to require Mr. LeKander to make the mortgage payments until the home was sold (calling the monthly mortgage payments "closely akin to rental payments[ ]" and claims the monthly amount of the payments would have been unnecessary "[i]f Mr. LeKander was assuming the entire indebtedness"). As an example, the estate points out that while the monthly payment amount on the mortgage debt is stated, the settlement agreement lists no such breakdown for any debts assumed by Ms. LeKander.

The estate's brief and Ms. LeKander's reply brief debate the application of two partition cases, *Pollyea v. Grodsky*, 315 S.W.2d 460, 462, 465 (Mo.App.St.L.D.1958) (in which attorney fees were payable as costs out of the gross proceeds of a partition sale and a federal lien was applied to net proceeds), and *Jennings v. Jennings*, 225 Mo.App. 1010, 33 S.W.2d 165, 167–68 (Mo.App.K.C.D.1930) (where attorney fees were payable as costs in a partition sale before the mortgage lien was addressed). Neither case is applicable. *Pollyea* and *Jennings* construe the meaning of "costs and expenses" in partition sales following judicial orders entered pursuant to statute. *Pollyea*, 315 S.W.2d at 461, 462–63; *Jennings*, 33 S.W.2d at 165–66.

The ultimate question to be resolved under Ms. LeKander's first point is not what was *actually* intended by Mr. and Ms. LeKander, but whether reasonable persons could fairly and honestly differ as to what the language in the settlement agreement means. *See Royalty*, 264 S.W.3d at 684. We believe, as did the trial court, that the answer to that question is "yes." The language of the settlement

4. A similar but newer version retains the additional meaning. MERRIAM-WEBSTER'S COLLE- GIATE DICTIONARY, 990 (11th ed.2005).

agreement suggests two plausible interpretations. The first is that, as between the parties, Mr. LeKander had agreed to pay the full mortgage balance on the home and that any sale proceeds were exclusive of the debt. The second reasonable interpretation is that Mr. LeKander agreed to pay the monthly mortgage payment on the home until it was sold, at which time the net proceeds of the sale would be shared equally by Mr. and Mrs. LeKander.

To find the second interpretation unreasonable would require us to look exclusively to the initial language in the table assigning debts, disregard the parenthetical clause, assume the first dictionary definition of proceeds as the only reasonable definition, and ignore the rest of the settlement agreement. This would not comply with the requirement that we look to the whole document in interpreting its meaning. *See, e.g., J.E. Hathman, Inc.,* 491 S.W.2d at 264; *Royalty,* 264 S.W.3d at 684; *Eveland,* 156 S.W.3d at 369. Because a plausible argument could be made for either party's interpretation, the settlement agreement is ambiguous. *See Vest v. Kansas City Homes, L.L.C.,* 288 S.W.3d 304, 311 (Mo.App. W.D.2009) (as the parties' interpretations of the relationship between a printed and handwritten clause in a contract were "equally plausible," the contract was ambiguous). Point I is denied.

### Point II: Construction of the Settlement Agreement

■ Ms. LeKander's second point contends the trial court "improperly construed the agreement against Ms. LeKander, in that it failed to refer to matters beyond the face of the agreement itself to infer the parties' intent." The trial court found that "[b]ecause Ms. LeKander's attorney drafted the agreement, it will be construed against the drafter."

■ Ms. LeKander properly cites *Eveland v. Eveland,* 156 S.W.3d 366, 369 (Mo.App. E.D.2004), for the proposition that when a contract is ambiguous, the intent of the parties is a question of fact. We must affirm the trial court's decision unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *In re Estate of Weddle,* 84 S.W.3d 144, 146 (Mo.App. W.D.2002).[5] "The real intention of the parties is the universal rule of construction." *Robson v. United Pac. Ins. Co.,* 391 S.W.2d 855, 861 (Mo. banc 1965).

To determine the parties' intent, Ms. LeKander argues the trial court should have looked to extrinsic evidence, but failed to do so, citing *Eveland,* 156 S.W.3d at 369. In considering an ambiguous term in a separation agreement, the *Eveland* court looked to the parties' own testimony and stated, "[a]mbiguities should only be construed against the drafter when other means of construction fail and the intent of the parties cannot be ascertained from other sources." *Id.*

In construing the settlement agreement against Ms. LeKander because her dissolution attorney drafted it, the trial court relied on *Triarch Ind., Inc. v. Crabtree,* 158 S.W.3d 772, 776 (Mo. banc 2005). In *Triarch,* our supreme court stated, in dicta, that "[i]f the contract is unambiguous, it will be enforced according to its terms. If ambiguous, it will be construed against

---

5. It appears that Ms. LeKander may make two distinct legal challenges here—she argues that the trial court failed to consider her evidence and that the trial court applied the wrong rule of construction. *See, e.g., Baiwir v. Moody,* 947 S.W.2d 822, 823 (Mo.App. S.D. 1997) (weight of evidence and application of law challenged in single point relied on). The better practice is to present the challenges in two separate points relied on. *See Houston v. Crider,* 317 S.W.3d 178, 187 n. 9 (Mo.App. S.D.2010).

the drafter, as is the case with other contracts under Missouri law." *Id.* at 776.

Construing a contract against the drafter is applicable "where no other evidence of the parties' intent exists." *Kells v. Missouri Mountain Properties, Inc.,* 247 S.W.3d 79, 86 (Mo.App. S.D.2008) (a case in which substantial evidence was presented of the parties' intent concerning which real estate taxes were to be paid under the contract). Here, the only evidence at trial was Ms. LeKander's testimony, the settlement agreement itself, a bank statement, and five bank deposit slips. Ms. LeKander presented no extrinsic evidence of Mr. LeKander's intent concerning the phrase "divide the proceeds from the sale of the home equally" or the parenthetical phrase "[a]pproximately $675.00 monthly until home is sold[.]"

Ms. LeKander testified that Mr. LeKander assumed the $60,000 mortgage debt based on the language of the settlement agreement. She also testified that Mr. LeKander remained in the home, that the down-payment for the home came from the sale of a beauty shop she had owned and sold during their marriage, and that the mortgage payments they made during the marriage came from both their earnings. The trial court was not required to believe her testimony. *In re Estate of Munday,* 887 S.W.2d 734, 735 (Mo.App. E.D.1994) ("The trial judge is free to believe all, none, or part of a witness' testimony and may reject the rest of it even if uncontradicted").

Even if believed, Ms. LeKander's evidence did nothing to demonstrate Mr. LeKander's intent as to how any remaining mortgage balance was to be allocated between the parties upon the sale of the property. The intent of *both* parties is relevant in construing an ambiguous contract. *See Lacey v. State Bd. of Registration For The Healing Arts,* 131 S.W.3d 831, 841 (Mo.App. W.D.2004) ("evidence concerning the practical construction which the parties themselves place upon a contract[ ]" is included with other evidence in ascertaining the parties' intent in ambiguous contract and evidence of the parties' interpretation before the controversy erupts is particularly influential).

Although Ms. LeKander argues that the estate offered no testimony disputing her position on the matter, it was Ms. LeKander's burden to prove her claim; the estate was not required to present evidence to overcome it. *See Munday,* 887 S.W.2d at 736 (holding that an attorney seeking payment for legal services rendered to the decedent had the burden of proving his claim and the trial court was free to reject even documentary and uncontested proof); *State, Dept. of Soc. Servs. v. Beckner,* 813 S.W.2d 353, 355 (Mo.App. S.D.1991) (holding a claim for Medicaid assistance provided to the decedent was not proven by the State and the estate was not required to present any evidence to defeat the State's claim). *See also Kennedy v. Fournie,* 898 S.W.2d 672, 680 (Mo.App. E.D.1995) (the party asserting the affirmative of an issue has the burden of proof on the issue unless the facts are "peculiarly within the knowledge of the opposing party[ ]").

Therefore, under *Eveland,* 156 S.W.3d at 369, and *Kells,* 247 S.W.3d at 86, in the absence of credible extrinsic evidence of the parties' intent, the trial court properly resorted to construing the contract against the drafter, Ms. LeKander. Point II is also denied, and the trial court's order granting her claim only as to the mortgage interest she had paid on the home after Mr. LeKander's death is affirmed.

BARNEY, P.J., and LYNCH, J., Concurs.